UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD VACCARIELLO on behalf of   :
himself and all others similarly situated,   :
        :    08 CIV 5336 (CLB)
        Plaintiff,   :
        :

- against -   :
        :

XM SATELLITE RADIO INC.,   :
        :
        Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Kenneth A. Plevan
Jeffrey A. Mishkin
Anthony J. Dreyer
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000

Attorneys for Defendant
XM Satellite Radio Inc.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES................................................................................iii

PRELIMINARY STATEMENT .................................................................... 1

FACTUAL BACKGROUND ........................................................................ 4

     A.    The Parties.......................................................................... 4

     B.    The Relevant Provisions of Vaccariello's Agreement with XM ............................ 4

     C.    Termination Upon Receipt of Plaintiff's Notice of Cancellation........................... 6

ARGUMENT .................................................................................... 7

I.    THE LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS ................. 7

     A.    Documents Incorporated by Reference May Be Considered by the Court............ 7

     B.    Unambiguous Contracts May Be Interpreted by the Court as a Matter of Law ................................................................................. 9

II.    GOL 5-903 DOES NOT APPLY TO XM'S CUSTOMER AGREEMENT.................... 10

     A.    XM Satellite Radio Is Not a Service "to or for any Real or Personal Property" Within the Meaning of GOL 5-903 ..................................... 11

     B.    XM's Customer Agreements Are Terminable at Will and Thus Fall Within the Exception of GOL 5-903(3) ............................................ 12

III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW ........................................ 13

     A.    The Elements of a GBL 349 Claim ................................................ 14

     B.    XM's Renewal Practice Was Fully Disclosed and Therefore Plaintiff Cannot Form the Basis of a GBL 349 Claim ..................................... 15

     C.    Plaintiff's GBL 349 Claim Fails Because XM Provided Prior Written Notice of the Contract Extension.................................................. 16

     D.    Because the Termination Rights of GOL 5-903 Are Already Incorporated into the XM Customer Agreement, No Case or Controversy Exists................... 17

     E.    Plaintiff Has Not Alleged That XM's Purported Conduct Was Materially Deceptive............................................................... 19

IV.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNJUST
        ENRICHMENT ........................................................................................................... 20

CONCLUSION ...................................................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

**Page**

ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., No. 01 Civ. 5661,
  2005 U.S. Dist. LEXIS 5723 (S.D.N.Y. Apr. 5, 2005) ............................................. 17

Abrams v. Interco Inc., 719 F.2d 23 (2d Cir. 1983)....................................................... 18

Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629 (E.D.N.Y. 2003)........ 13

Andre Strishak & Associates, P.C. v. Hewlett Packard Co., 300 A.D.2d 608 (2d
  Dep't 2002).............................................................................................................. 19

Ballas v. Virgin Media, Inc., 856 N.Y.S.2d 22 (Sup. Ct. Nassau County 2007).............. 15

Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey,
  Inc., 448 F.3d 573 (2d Cir. 2006) .............................................................................. 21

Bildstein v. Mastercard International Inc., 329 F. Supp. 2d 410 (S.D.N.Y. 2004).... 14, 19

Briarpatch, Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004) ......................... 20

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382 (1987).......................... 21

Compania Financiera Ecuatoriana De Desarollo, S.A. v. Chase Manhattan Bank,
  No. 97 Civ. 5724, 1998 U.S. Dist. LEXIS 1918 (S.D.N.Y. Feb. 19, 1998)................. 9

Conboy v. AT&T Corp., 84 F. Supp. 2d 492 (S.D.N.Y. 2000), aff'd, 241 F.3d 242
  (2d Cir. 2001) ...................................................................................................... 14, 19

Concourse Nursing Home v. Axion Funding Group, Inc., 279 A.D.2d 271 (1st
  Dep't 2001)......................................................................................................... 18, 22

Cron v. Hargo Fabrics, Inc., 91 N.Y.2d 362 (1998)........................................................ 13

Deposit Guaranty National Bank v. Roper, 445 U.S. 326 (1980)..................................... 17

Donald Rubin, Inc. v. Schwartz, 160 A.D.2d 53 (1st Dep't 1990)............................. 10, 11

In re First Central Financial Corp., 377 F.3d 209 (2d Cir. 2004) ..................................... 21

First Lincoln Holdings, Inc. v. Equitable Life Assurance Society of the United
  States, 164 F. Supp. 2d 383 (S.D.N.Y. 2001) .............................................................. 9

Fox v. Board of Trustees of the State University of New York, 42 F.3d 135 (2d Cir. 1994) ........................................................................................................ 18

Gale v. Int'l Bus. Mach. Corp., 9 A.D.3d 446, 447 (2d Dep't 2004)................................ 19

I. Meyer Pincus & Associate v. Oppenheimer & Co., 936 F.2d 759 (2d Cir. 1991) .......... 8

International Audiotext Network, Inc. v. AT&T, 62 F.3d 69 (2d Cir. 1995)................. 7, 9

In re Kurtzman, 194 F.3d 54 (2d Cir. 1999) .................................................... 18

Landau v. American International Group, Inc., No. 97 Civ. 3465, 1997 U.S. Dist. LEXIS 14325 (S.D.N.Y. Sept. 23, 1997) ................................................... 9

Levy v. Southbrook International Investments, Ltd., 263 F.3d 10 (2d Cir. 2001) ............ 8

Ludl Elecs. Prods. Ltd. v. Wells Fargo Fin. Leasing, 6 A.D.3d 397 (2d Dep't 2004) ........................................................................................... 3, 15, 16

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397 (S.D.N.Y. 2002)............................. 7

Mina Investment Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355 (S.D.N.Y. 1998 ........ 21

Mobile Diagnostic Testing Servs., Inc. v. TLC Health Care Network, 19 A.D.3d 1145 (4th Dep't 2005) ............................................................................. 11

New Paradigm Software Corp. v. New Era of Networks, 107 F. Supp. 2d 325 (S.D.N.Y. 2000) ................................................................................... 21

Prial v. Supreme Court Uniformed Officers Association, 397 N.Y.S.2d 528 (1st Dep't 1977)....................................................................................... 11

Rapoport v. Asia Electronics Holding Co., 88 F. Supp. 2d 179 (S.D.N.Y. 2000).............. 7

S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp., 84 F.3d 629 (2d Cir. 1996 ........ 14

Sands v. Ticketmaster-New York, Inc., 207 A.D.2d 687 (1st Dep't 1994)................ 15, 16

Sel-Leb Marketing, Inc. v. Dial Corp., No. 01 Civ. 9250, 2002 U.S. Dist. LEXIS 15932 (S.D.N.Y. Aug. 27, 2002)............................................................ 7, 8

Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 U.S. Dist. LEXIS 24584 (S.D.N.Y. Dec. 9, 2004) ..................................................................................... 7, 9

Spagnola v. Chubb Corp., No. 06 Civ. 9960, 2007 U.S. Dist. LEXIS 21676
(S.D.N.Y. Mar. 27, 2007) ...................................................................... 21

Stutman v. Chemical Bank, 95 N.Y.2d 24 (2000) .................................... 14, 19

Super Glue Corp. v. Avis Rent a Car System, Inc., 159 A.D.2d 68 (2d Dep't 1990)
.................................................................................................................. 15

Ward v. Bank of New York, 455 F. Supp. 2d 262 (S.D.N.Y. 2006) .................. 17, 18, 19

Wayland Investment Fund, LLC v. Millenium Seacarriers, Inc., 111 F. Supp. 2d
450 (S.D.N.Y. 2000) ............................................................................. 9

Weiss v. Fein, No. 01 Civ. 1086, 2002 U.S. Dist. LEXIS 4783 (S.D.N.Y. Mar. 22,
2002) ......................................................................................................... 19

Wornow v. Register.com, Inc., 778 N.Y.S.2d 25 (1st Dep't 2004)....................... 3, 11, 16

## STATUTES

New York General Business Law § 349 ........................................................... 2

N.Y. General Obligation Law § 5-903 (McKinney 2001) .............................. 10

U.S. Constitution, Article III, § 2 ................................................................. 17

Defendant XM Satellite Radio Inc. ("XM") submits this memorandum of law in support of its motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss in its entirety the complaint of plaintiff Richard Vaccariello.

## PRELIMINARY STATEMENT

This lawsuit involves an improper attempt by plaintiff to disavow the plain language of his contract with XM, and to avoid paying for a very small portion of a satellite radio subscription of an indefinite term that he willingly accepted but later neglected to cancel.

XM provides subscription-based radio that is broadcast via satellite and the Internet. In April 2005, plaintiff Vaccariello entered into an agreement with XM, and pre-paid for three years of XM radio which he received by means of an XM-compatible receiver installed in his leased automobile. According to the express provisions of Vaccariello's contract with XM – which he notably failed to attach to his complaint – plaintiff's agreement with XM was to continue indefinitely until cancelled by either party. The agreement also made clear that plaintiff would continue to be charged for his XM radio subscription until it was cancelled, <u>which plaintiff had the contractual right to do at any time</u>.

Notwithstanding the clear and unambiguous language of the contract, plaintiff failed to cancel his XM subscription in February 2008 when he returned the leased automobile that he had used to access XM's satellite radio signal. In accordance with the terms of the contract, plaintiff's XM subscription continued even though the automobile had been returned.

On or about March 21, 2008, XM sent a letter to Vaccariello, advising him that his three-year pre-paid period was to roll-over on April 3, 2008, and offering several different discount payment options. Despite this notice and the plain language of his agreement with XM, plaintiff waited until May 9, 2008 – the date on which he alleges that he received a bill for an additional three-year pre-paid period – to cancel his subscription. In accordance with the parties'

agreement, XM cancelled plaintiff's subscription, and charged him $11.83 for the period of April 3, 2008 through May 9, 2008, during which time XM continued to provide plaintiff access to XM satellite radio.

Plaintiff alleges that XM failed to notify him of an alleged automatic renewal of his contract in violation of New York General Obligations Law § 5-903 ("GOL 5-903"). That statute requires certain service providers to give customers written notice (served personally or by certified mail) no earlier than 30 days and no later than 15 days before an automatic renewal date. Plaintiff has not, however, asserted a cause of action for a violation of GOL 5-903, as no such cause of action exists. Rather, Vaccariello asserts that: (1) XM's continuation of his XM satellite radio subscription following the completion of his pre-paid period constituted a deceptive consumer practice in violation of New York Gen. Bus. Law § 349 ("GBL 349") (Compl. ¶¶ 29-30); and (2) XM was unjustly enriched by charging plaintiff $11.83 for the XM satellite radio it provided plaintiff from April 3, 2008 through May 9, 2008, the date on which he cancelled his XM Satellite Radio subscription.[1] The complaint purports to be a class action on behalf of Vaccariello and all other New York citizens who had their XM contracts automatically renewed in alleged non-compliance with GOL 5-903.

As an initial matter, plaintiff cannot demonstrate that his contract with XM is within the purview of GOL 5-903, which governs only those contracts that provide for the maintenance, repair, or service to or for personal property. Vaccariello's contract with XM has nothing to do with maintenance, repair or service of any personal property. Rather, the contract provides only for a satellite radio subscription, and expressly disclaims any obligation on the part of XM to maintain, service or repair plaintiff's radio. Moreover, GOL 5-903, which was enacted

---

[1]   Plaintiff asserts a third cause of action for injunctive relief, apparently premised on his GBL 349 and unjust enrichment claims.

to prevent parties from being unwittingly tied to long-term contractual obligations, makes clear that its notice requirement does <u>not</u> apply if the contract renewal term is one month or less. Because Vaccariello's contract with XM was terminable by him <u>at any time</u>, the contract clearly has a term of one month or less, and GOL 5-903 is thus inapplicable.

At all events, regardless of whether GOL 5-903 is applicable here, plaintiff cannot state a claim for either a violation of GBL 349 or unjust enrichment. As to plaintiff's GBL 349 claim, there are at least four separate, independent reasons why dismissal is warranted:

- <u>First</u>, New York courts have long made clear that a GBL 349 claim cannot be maintained where, as here, the challenged practice is fully disclosed in the parties' agreement. Indeed, at least one New York court has expressly rejected a GBL 349 claim based on a contract renewed without providing statutory notice on the ground that the contract expressly stated the contract would continue after expiration of its initial term. <u>See</u> <u>Ludl Elecs. Prods. Ltd. v. Wells Fargo Fin. Leasing, Inc.</u>, 6 A.D.3d 397 (2d Dep't 2004).

- <u>Second</u>, where, as here, a party sends its customer prior, written notice of the renewal of the contract, it cannot – as a matter of law – be found to have engaged in a deceptive consumer practice in violation of GBL 349. <u>See</u> <u>Wornow v. Register.com, Inc.</u>, 778 N.Y.S.2d 25 (1st Dep't 2004).

- <u>Third</u>, there is no case or controversy presented by the complaint. At most, GOL 5-903 ensures that Vaccariello's contract with XM was terminable at his election. Because this right was already expressly provided for in his contract, and because he did in fact successfully terminate his contract by giving notice, there is no litigable dispute between the parties, and the court lacks subject matter jurisdiction over the complaint.

- <u>Fourth</u>, plaintiff has failed to allege a necessary element of a GBL 349 claim – specifically that any purported misconduct by XM was material. In fact, plaintiff has not even alleged that disclosure of the challenged contract-continuation terms would have affected his decision to subscribe to XM.

As to plaintiff's unjust enrichment claim, the law is clear that unjust enrichment is a quasi-contractual claim that cannot stand in the face of a valid, enforceable contract governing the same subject matter. XM cannot be found to have been unjustly enriched merely for enforcing its right under the contract with Vaccariello to recover payment for its provision of XM satellite radio. For this reason, plaintiff cannot state a claim for unjust enrichment.

3

## FACTUAL BACKGROUND

Unless otherwise noted, the facts set forth herein are taken from the complaint and are presumed to be true solely for the purpose of this motion.  All additional facts are taken from documents which, as XM shows below, were incorporated by reference into the complaint by virtue of the nature and scope of its allegations.

### A.    The Parties

XM is a publicly traded company offering subscription-based radio, known as "XM Satellite Radio" via satellite and the Internet.  (Compl. ¶ 8.)  XM transmits its XM Satellite Radio signal from studios in Washington D.C., New York City, Nashville and Chicago, and offers 170 digital channels across the United States.  (Id.)  XM has over 9.1 million subscribers who receive XM Satellite Radio reception through motor vehicles, home and portable radios, as well as over the Internet. (Id.)

Plaintiff Vaccariello is a resident of Westchester County, New York.  (Compl. ¶ 6.)  On April 3, 2005, plaintiff entered into a contract with XM pursuant to which XM enabled defendant to receive the XM Satellite Radio satellite radio broadcast in his leased automobile radio.  (Compl. ¶¶ 6, 9.)  At the time, Vaccariello pre-paid for three years of XM Satellite Radio. (Compl. ¶ 9.)

### B.    The Relevant Provisions of Vaccariello's Agreement with XM

The XM contract, known as XM's "Customer Agreement," governs the terms of the relationship between XM Satellite Radio subscribers and XM.  Vaccariello's Customer Agreement with XM stated:

> THIS AGREEMENT CONTAINS THE TERMS OF YOUR USE OF XM SATELLITE RADIO SERVICES.  IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE (OUR CONTACT INFORMATION IS LISTED BELOW).  IF YOU DO NOT CANCEL YOUR SERVICE WITHIN 3 DAYS OF INITIATION OF

4

YOUR SERVICE AND INSTEAD CONTINUE TO RECEIVE YOUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THAT THEY WILL BE LEGALLY BINDING ON YOU.

(Dreyer Decl. Ex. A, Customer Agreement at 1.)  Vaccariello's Customer Agreement also expressly stated that his contract with XM would continue indefinitely until terminated by him, which could be done at any time:

CANCELLATION

a) Term.  **The term of this Agreement is indefinite and Service will continue until cancelled**.

b) Your Cancellation.  You may cancel Service by notifying us.  This notice will become effective at the end of your billing cycle.  **You are responsible for payment of all outstanding balances accrued through that effective date.**  We (or the creditor or lessor of your vehicle, if your Subscription Fee is included in the amount financed or leased) will refund amounts you may have prepaid on a quarterly, annual or multi-year basis representing those months beyond the billing cycle month during which you cancelled your service.  Fees attributable to certain promotional offerings or Service received during trial periods may not be refunded.  Service credits will not be refunded in cash, but will be honored in the form of Service for the remaining length of the credit.

(Customer Agmt., § 5 (emphasis added).)  The Customer Agreement also provided a phone number, mailing address and email address that could be used to contact XM and terminate service at any time (See Customer Agmt. "Contacting XM Satellite Radio," § 5(d)).

Finally, Vaccariello's Customer Agreement made clear that he should cancel his XM Satellite Radio subscription in the event he disposed of the receiver used to listen to XM Satellite Radio; otherwise, he would remain obligated to pay for his XM Satellite Radio subscription.  Specifically, paragraph 4(c) of the Customer Agreement stated:

Loss of Radio.  You should report to XM **and cancel your subscription** if your XM Radio is lost, stolen, sold, transferred or otherwise removed from your possession without your permission.  **Otherwise you will continue to pay for the Service.**

(Customer Agmt., § 4(c) (emphasis added).)

5

**C.     Termination Upon Receipt of Plaintiff's Notice of Cancellation**

        Vaccariello alleges that in February 2008, his automobile lease expired and he returned his vehicle to the automobile dealer.  (Compl. ¶ 10.)  He failed, however, to advise XM that he wished to terminate his XM Satellite Radio subscription.  (Compl. ¶ 10.)  He alleges that XM did not notify him that his XM subscription would continue beyond April 3, 2008, the final day of the three-year period for which he had pre-paid for XM Satellite Radio.  (Compl. ¶ 11.)

        Contrary to plaintiff's assertion, in a letter dated March 21, 2008, XM notified Vaccariello that his XM Satellite Radio subscription would continue past April 3, 2008.  (Dreyer Decl. Ex. B.)  The letter stated that Vaccariello's pre-paid period would roll-over for an additional three-year pre-paid period at a discounted rate, but that he could instead chose from a variety of pre-paid plans, ranging from a quarterly plan to a five-year plan.  (Id.)  Despite this written notice, and despite the express contractual provision stating that his XM Satellite Radio subscription would continue until cancelled, Vaccariello made no effort at that time to cancel his subscription.

        On or about May 9, 2008, plaintiff received a bill from XM for $359.64, the total amount that plaintiff would have had to pre-pay to cover a three-year period at a discounted price.  (See Compl. ¶¶ 12-13.)  Plaintiff immediately notified XM that he wished to terminate his service. (Compl. ¶ 14.)  In compliance with the terms of Vaccariello's Customer Agreement, XM terminated his XM Satellite Radio subscription.  (Compl. ¶¶ 15-16.)  XM subsequently billed plaintiff only for the XM Satellite Radio subscription provided to him from April 3, 2008 through May 10, 2008.  (Compl. ¶ 14.)

# ARGUMENT

## I.   THE LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS

The purpose of a motion to dismiss is to "assess the legal feasibility of the complaint." Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 U.S. Dist. LEXIS 24584, at *6 (S.D.N.Y. Dec. 9, 2004); Sel-Leb Mktg., Inc. v. Dial Corp., No. 01 Civ. 9250, 2002 U.S. Dist. LEXIS 15932, at *5 (S.D.N.Y. Aug. 27, 2002).  A plaintiff's cause of action shall be dismissed if it is plainly refuted by documentary evidence.  See, e.g., Sobek, 2004 U.S. Dist. LEXIS 24584, at *7 ("While the Court must accept the allegations in the complaint as true, to the extent any allegations directly contradict evidence contained in the documents relied upon by a plaintiff, the documents control, and the allegations need not be accepted as true."); Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); Rapoport v. Asia Elecs. Holding Co., 88 F. Supp. 2d 179, 183-84 (S.D.N.Y. 2000) (dismissing plaintiff's claim that prospectus was materially false and misleading in its failure to disclose information when prospectus, which defendant attached to its motion, clearly showed that such information was disclosed).

### A.   Documents Incorporated by Reference
####    May Be Considered by the Court

In reviewing a Rule 12(b)(6) motion, a court may consider, in addition to the complaint itself, documents incorporated by reference in the complaint without converting the motion into one for summary judgment.  See, e.g., Int'l Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 71-72 (2d Cir. 1995).  Even when a plaintiff does not incorporate a document by specific reference or attach it to the complaint, a court may properly consider that document when the complaint "relies heavily upon its terms and effect," which renders the document integral to the complaint.  Id. at 72 (emphasis added).

Here, plaintiff's entire complaint is based on his Customer Agreement with XM and XM's purported failure to disclose its renewal of plaintiff's XM Satellite Radio subscription. Although plaintiff did not attach the Customer Agreement to his pleading, plaintiff refers to the XM "contract" throughout his complaint. (Compl. ¶¶ 1, 6, 9, 10, 11, 13, 19, 21, 23, 24, 29.) Thus, the Customer Agreement, which specifically sets forth XM's renewal terms, is incorporated by reference into plaintiff's complaint and should be considered by the Court in assessing the complaint's legal sufficiency. See, e.g., Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 13 n.3 (2d Cir. 2001) (district court's consideration of affidavit and other documents attached to defendant's motion to dismiss was proper because the complaint referred to those documents); Sel-Leb, 2002 U.S. Dist. LEXIS 15932, at *7 ("[A] plaintiff's careful avoidance of certain documents in its pleading does not make those documents any less integral to the complaint.").

Similarly, although the complaint does not refer to XM's letter notifying him that his pre-paid period would renew on April 3, 2008, the letter is directly related to plaintiff's allegations that XM deceptively made no effort to inform plaintiff that his subscription would continue, and that letter therefore should also be deemed incorporated by reference into the complaint. See, e.g., I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991) (even though plaintiff did not submit the prospectus as an exhibit to his complaint, court may properly consider the document because plaintiff's claims were based solely on an alleged misrepresentation within the prospectus); Sel-Leb, 2002 U.S. Dist. LEXIS 15932, at *8 (although plaintiff "studiously avoid[ed] mentioning" letter agreement in its complaint, court

considered the document in granting defendant's motion to dismiss because the agreement waived plaintiff's right to sue defendant).[2]

### B. Unambiguous Contracts May Be Interpreted by the Court as a Matter of Law

Under New York law,[3] the interpretation of a written agreement is a matter of law for the court, which may thus interpret the contract in connection with a motion to dismiss. See, e.g., First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of the United States, 164 F. Supp. 2d 383, 393 (S.D.N.Y. 2001), aff'd, 43 F. App'x 462 (2d Cir. 2002); Compania Financiera Ecuatoriana De Desarollo, S.A. v. Chase Manhattan Bank, No. 97 Civ. 5724, 1998 U.S. Dist. LEXIS 1918, *7 (S.D.N.Y. Feb. 19), aff'd mem., 165 F. 3d 13 (2d Cir. 1998). When the "'words of a contract are clear and unambiguous, they must be accorded their plain and ordinary meaning and the [contract] enforced as written.'" Landau v. Am. Int'l Group, Inc., No. 97 Civ. 3465, 1997 U.S. Dist. LEXIS 14325, *13 (S.D.N.Y. Sept. 23, 1997); see also Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc., 111 F. Supp. 2d 450, 453-54 (S.D.N.Y. 2000) (citation omitted). When the plain terms of a contract clearly contradict a plaintiff's claims, the plaintiff's complaint should be dismissed. See, e.g., Sobek, 2004 U.S. Dist. LEXIS 24584, at *6-9; Compania Financiera, 1998 U.S. Dist. LEXIS 1918, at *12-13 (dismissing claim that defendant breached parties' agreement by failing to pay interest to plaintiff when, in fact, the terms of the agreement clearly stated defendant had no such obligation).

---

[2]  In the alternative, the Court may consider the renewal letter pursuant to Rule 12(d). See Int'l Audiotext, 62 F.3d at 72. In any event, there are conclusive grounds for complete dismissal of the complaint even if the letter is not considered.

[3]  The Customer Agreement states that it will be interpreted under the laws of the state where XM radio is provided to him. (Customer Agmt. § 10(b).)

## II.    GOL 5-903 DOES NOT APPLY TO XM'S CUSTOMER AGREEMENT

Plaintiff alleges (Compl. ¶¶ 1, 23) that XM renews its contracts with subscribers

without providing notice of the renewal in accordance with GOL 5-903, which states as follows:

1.   As used in this section, "person" means an individual, firm, company, partnership or corporation.

2.   No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous of the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.

3.   Nothing herein contained shall be construed to apply to a contract in which the automatic renewal period specified is one month or less.

N.Y. Gen. Oblig. Law § 5-903 (McKinney 2001).  GOL 5-903 was enacted in 1963 to protect

"small businessmen who unwittingly find themselves 'married'" to long-term service contracts.

Donald Rubin, Inc. v. Schwartz, 160 A.D.2d 53, 56 (1st Dep't 1990) (citation omitted).  The

New York Attorney General's memo submitted in support of GOL 5-903 stated, "[t]he bill will

aid the small businessman who on many occasions in the past has been compelled to continue

doing business with a particular company for an extended period of months or years despite

dissatisfaction with the cost or quality of the service or the fact that he may no longer require the

service."  N.Y. Legis. Ann., at 52 (1961).

As shown below, plaintiff's assertion that XM failed to comply with GOL 5-903

cannot, for two reasons, succeed as a matter of law.  First, the digital radio signal and

programming XM offers to its customers is not a service "to or for any real or personal property"

10

within the meaning of the statute.  Second, even assuming *arguendo* that the XM Satellite Radio

subscription constitutes a personal property service of the type covered by GOL 5-903(2),

plaintiff's Customer Agreement nevertheless falls squarely within the one-month-or-less

exception provided by GOL 5-903(3) because it was terminable at will.

A.    **XM Satellite Radio Is Not a Service "to or for any Real**
      **or Personal Property" Within the Meaning of GOL 5-903**

As the text of the statute makes clear, GOL 5-903 does not broadly apply to all

contracts for the provision of "services" in the general sense, but only those that involve the

provision of "service" in the sense of "maintenance" and "repair" service.  Where, as here, the

subject matter of the contract does not fall within the scope of GOL 5-903, any claims premised

on non-compliance with the statute cannot be sustained as a matter of law.  See, e.g., Mobile

Diagnostic Testing Servs., Inc. v. TLC Health Care Network, 19 A.D.3d 1145 (4th Dep't 2005)

(affirming dismissal of complaint); Wornow v. Register.com, Inc., 778 N.Y.S.2d 25 (1st Dep't

2004) (affirming dismissal of complaint); Donald Rubin Inc., 160 A.D.2d at 58 (finding GOL 5-

903 inapplicable to contract for consulting services and administration of benefit plans

notwithstanding that "the person hired is likely to come in contact with an item of personal

property owned by the employer which is arguably serviced or maintained by such person");

Prial v. Sup. Ct. Uniformed Officers Ass'n, 397 N.Y.S.2d 528, 530 (1st Dep't 1977) (attorney

retainer agreement does not fall within purview of GOL 5-903).

For example, in Mobile Diagnostic, a provider of echocardiograms to hospital

patients was also under contract to provide all necessary equipment, including transport,

maintenance and set-up of such equipment.  Even though the contract at issue involved some

maintenance of the business equipment, the court found GOL 5-903 inapplicable because "the

11

primary purpose of the contract was for the administering of echocardiograms to patients, not

'for service, maintenance or repair to or for any real or personal property.'" 19 A.D.3d at 1146.

       In the instant case, the primary purpose – indeed the sole purpose – of plaintiff's

Customer Agreement with XM is for XM to provide and plaintiff to receive access to XM's

digital radio signal and programming. Plaintiff's agreement is in no way a contract for the

service (i.e., the "fixing"), maintenance or repair of any real or personal property. In fact, there

is nothing whatsoever in plaintiff's agreement that obligates XM to maintain or repair plaintiff's

personal property. To the contrary, the Customer Agreement <u>expressly disclaims</u> all

responsibility for servicing or maintaining Vaccariello's car stereo:

> <u>Authorized Suppliers</u>. We do not make or install any of the equipment you may
> use to receive the Service ("XM Radios"). We only provide the [XM Satellite
> Radio] Service. You must purchase your XM Radio, **and any repairs, parts,
> installation or service for it**, from authorized sellers or manufacturers.

(Customer Agmt., § 4(a) (emphasis added).) In such circumstances, plaintiff cannot state any

legal claim premised on XM's purported failure to comply with GOL 5-903.

### B.    XM's Customer Agreements Are Terminable at Will and Thus Fall Within the Exception of GOL 5-903(3)

       Even assuming, *arguendo*, that XM's digital radio signal and programming falls

within GOL 5-903(2), the statutory notice provision nevertheless is inapplicable because

plaintiff's agreement with XM falls squarely within the exception provided by GOL 5-903(3).

As noted, the purpose of GOL 5-903 is to prevent businessmen from unwittingly being trapped

into long-term contracts as a result of self-effectuating renewal terms. Consistent with this

objective, the New York State legislature expressly carved out from the notice requirement of

GOL 5-903 those agreements for which the contracting party is not bound to a long-term

contract – i.e., contracts for which "the automatic renewal period specified is one month or less."

GOL 5-903(3).

Although plaintiff's Customer Agreement with XM continues without a specific term, it expressly states that he could cancel his service at any time – whether prior to, at, or after the expiration of a pre-paid period. (Customer Agmt. §§ 1(a), 6(a).)  In fact, plaintiff concedes (as he must) that his XM subscription was cancelled immediately upon his request. (Compl. ¶ 14.)  Nor can plaintiff point to any provision of his Customer Agreement that legally bound him for a period of more than a month.  The contract also made clear that plaintiff would be entitled to a full refund of any unused amounts that had been paid in advance toward his XM Satellite Radio subscription. (Customer Agmt. § 6(b).)

In such circumstances, plaintiff's contract with XM cannot be considered one with any required term at all, and certainly not one of greater than one month.[4]  The purpose for which GOL 5-903 was enacted – to prevent the unwitting imposition of a long-term contractual obligation – is not in any way implicated by a contract that Vaccariello was free to walk away from, and did walk away from, at any time.

## III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW

Even assuming that plaintiff's Customer Agreement with XM falls within the purview of GOL 5-903, plaintiff has nevertheless failed to state a claim under GBL 349.  The sole basis for plaintiff's GBL 349 claim is the contention that XM deceived and misled him by failing to disclose its practice of extending its contract for XM Satellite Radio beyond a pre-paid

---

[4]    Where an agreement is terminable at will, it should be construed as having a term of one month or less. Cf. Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 644-45 (E.D.N.Y. 2003) (joint venture and non-competition agreement, which governed parties' relationship from 1996 to 2000, was terminable at will and thus construed to be an agreement of less than one year for statute of fraud purposes); Cron v. Hargo Fabrics, Inc., 91 N.Y.2d 362, 366-67 (1998) (employment agreement for plaintiff, who was employed by defendant for 13 years, was terminable at will and thus deemed to be an agreement of less than one year for statute of fraud purposes).

term.  (Compl. ¶ 30.)  There are at least four separate and independent reasons why plaintiff's GBL 349 claim should be dismissed.

First, New York courts have made clear that a GBL 349 claim cannot be maintained where, as here, the allegedly deceptive practice was fully disclosed in the parties' agreement.  Second, New York law is equally clear that a GBL 349 claim based on a failure to comply with GOL 5-903 cannot be maintained where, as here, the contracting party did provide prior, written notice.  Third, because XM's Customer Agreement itself incorporated the rights provided by GOL 5-903 – specifically, that the contract was terminable at will – there is no case or controversy and the complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  Finally, the plaintiff has failed to plead a necessary element of a GBL 349 claim, specifically, that XM's alleged concealment or omission was material.

**A.     The Elements of a GBL 349 Claim**

In order to sustain a cause of action under GBL 349,  plaintiff must show:  (1) a challenged act or practice that was consumer-oriented; (2) that defendant's conduct was misleading in a material way; and (3) that plaintiff suffered injury by reason of such conduct. See S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996); Bildstein v. Mastercard Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004); Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).  An act or practice is deceptive within the meaning of GBL 349 only if it is likely to mislead a reasonable consumer.  S.Q.K.F.C., 84 F.3d at 636-37 (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (N.Y. 1995)).  This question may be determined as a matter of law.  See, e.g., Conboy v. AT&T Corp., 84 F. Supp. 2d 492, 505 (S.D.N.Y. 2000), aff'd, 241 F.3d 242 (2d Cir. 2001).

**B.      XM's Renewal Practice Was Fully Disclosed and
Therefore Plaintiff Cannot Form the Basis of a GBL 349 Claim**

Under New York law, if a challenged business practice is disclosed as part of the

parties' contract or knowledge of that practice is otherwise available to a consumer before

entering into the agreement, as a matter of law there can be no deception and no violation of

GBL 349.  See, e.g., Super Glue Corp. v. Avis Rent a Car Sys., Inc., 159 A.D.2d 68, 71 (2d

Dep't 1990) (dismissing GBL 349 claim when challenged practice was disclosed in rental

agreement); Sands v. Ticketmaster-N.Y., Inc., 207 A.D.2d 687 (1st Dep't 1994) (plaintiff's GBL

349 claim dismissed because defendant disclosed challenged fees prior to ticket sale); Ballas v.

Virgin Media, Inc., 856 N.Y.S.2d 22, text available at 2007 WL 4532509, at *4-5 (Sup. Ct.

Nassau County 2007) (challenged practice fully disclosed on company's website and in terms of

service booklet provided with cell phone) (table decision, appeal pending).

The general rule prohibiting GBL 349 claims involving an allegedly deceptive

practice or act that has been fully disclosed unquestionably applies to contracts containing

renewal provisions like the one challenged here.  Indeed, at least one New York court flatly

rejected the precise argument plaintiff attempts to make in this case.  See Ludl Elecs. Prods. Ltd.

v. Wells Fargo Fin. Leasing, 6 A.D.3d 397 (2d Dep't 2004).  In Ludl, plaintiff alleged that the

defendant engaged in a deceptive business practice in violation of GBL 349 by enforcing an

automatic renewal provision in the parties' lease for business equipment.  Specifically, plaintiff

contended that defendant's automatic renewal did not comply with New York GOL 5-901 –

which imposes notice requirements comparable to GOL 5-903 in connection with the automatic

renewal of lease agreements – and that defendant violated GBL 349 by enforcing the renewal.  Id.

at 397-98.  The Second Department held that, even assuming GOL 5-901 applied, the automatic

lease renewal was "specifically provided for by the parties' lease and thus was fully disclosed."

15

Id. at 398.  Accordingly, the court held, "such conduct is not a deceptive business practice within the meaning of General Business Law § 349(a)," and affirmed dismissal of the complaint.  Id.

As shown by the Customer Agreement referred to in the complaint (as well as other documentary evidence this Court may consider on a motion to dismiss), XM fully disclosed that Vaccariello's XM Satellite Radio subscription was indefinite and would extend beyond the pre-paid period.  Specifically, the Customer Agreement states "[t]he term of this Agreement is indefinite and Service will continue until canceled."  (Customer Agmt., § 5(a).)[5] In addition, the Customer Agreement states that a subscriber must notify XM and cancel his subscription if his XM radio is "lost, stolen, sold, transferred or otherwise removed from [his] possession without [his] permission … [o]therwise, [he] will continue to pay for the [XM Satellite Radio] Service."  (Id. § 4(c).)

In short, XM's Customer Agreement clearly and unequivocally disclosed to plaintiff the relevant information concerning the indefinite nature of his XM Satellite Radio subscription.  Accordingly, there was full and complete disclosure of the terms at issue within the meaning of the General Business Law, and plaintiff therefore cannot state a claim for a GBL 349 violation.  See, e.g., Ludl Elecs., 6 A.D.3d at 398; Sands, 207 A.D.2d at 687.

### C.    Plaintiff's GBL 349 Claim Fails Because XM Provided Prior Written Notice of the Contract Extension

Plaintiff's GBL 349 claim also fails because, in addition to disclosing the indefinite term in the Customer Agreement, XM notified plaintiff in writing, prior to the extension of his service past April 3, 2008, that his service would in fact continue.  See Wornow

---

[5]    The Customer Agreement also provides that, upon receiving notice of a subscriber's wish to terminate service, XM will terminate the service at the end of the subscriber's billing cycle, and XM "will refund amounts you may have prepaid on a quarterly, annual or multi-year basis representing those months beyond the billing cycle month during which you cancelled your service."  (Customer Agmt., § 5(b).)

v. Register.com, Inc., 778 N.Y.S.2d 25 (1st Dep't 2004). In Wornow, the plaintiff asserted

claims under GOL 5-903 and GBL 349, accusing defendant of deceptive trade practices by

automatically renewing plaintiff's domain name registration without complying with GOL 5-903.

Prior to the renewal, defendant attempted to notify plaintiff by email that his domain name was

about to be renewed. Id. at 26. Although plaintiff did not actually receive the notice (because he

failed to keep his email address current), the First Department affirmed the dismissal of

plaintiff's GBL 349 claim, finding that plaintiff could not state a claim for deceptive trade

practices based on the renewal where defendant made a good-faith attempt to provide plaintiff

advance notice of renewal. Id.

       Having similarly provided plaintiff with advance notice that his XM Satellite

Radio subscription would continue past April 3, 2008, XM falls squarely within the holding of

Wornow. Prior to April 3, 2008, XM sent a written notice to plaintiff's mailing address, the

same address to which XM mailed – and plaintiff concedes he received – XM's bill. (Compl. ¶

15.) XM clearly satisfied the standard set forth in Wornow, and plaintiff's claim should be

dismissed.

      **D.**    **Because the Termination Rights of GOL 5-903**
                **Are Already Incorporated into the XM Customer**
                **Agreement, No Case or Controversy Exists**

       Plaintiff's GBL 349 claim also should be dismissed under Rule 12(b)(1) for lack

of subject matter jurisdiction because it is moot and thus raises no case or controversy. See, e.g.,

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 335 (1980). Article III of the U.S.

Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. Const., art. III,

§ 2. Plaintiffs bear the burden of demonstrating, by a preponderance of the evidence, that subject

matter jurisdiction exists in a case. See, e.g., Ward v. Bank of New York, 455 F. Supp. 2d 262,

267 (S.D.N.Y. 2006); ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., No. 01 Civ.

17

5661, 2005 U.S. Dist. LEXIS 5723, at *4 (S.D.N.Y. Apr. 5, 2005).  The mootness doctrine requires the plaintiff to have a personal stake or legally cognizable interest in the outcome of the lawsuit at the time it is filed and continuing throughout the litigation, or the court should dismiss for lack of jurisdiction.  See, e.g., In re Kurtzman, 194 F.3d 54, 58 (2d Cir. 1999); Fox v. Board of Trs. of the State Univ. of New York, 42 F.3d 135, 140 (2d Cir. 1994).  In deciding a party's 12(b)(1) motion, a court "need not accept as true contested jurisdictional allegations," and it may properly consider evidence outside the pleadings.  Ward, 455 F. Supp. at 265 (citations omitted).

A case is moot "when it is 'impossible for the court to grant any effectual relief whatever to a prevailing party.'"  In re Kurtzman, 194 F.3d at 58.  Indeed, when the plaintiff's maximum recovery has already been made available by the defendant, the Second Circuit has held that the case is moot and "there is no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which defendant has more than satisfied."  Abrams v. Interco Inc., 719 F.2d 23, 32 (2d Cir. 1983).

Here, plaintiff's GBL 349 claim is premised on XM's alleged failure to comply with GOL 5-903.  However, GOL 5-903 does not provide a separate cause of action or a right to damages for a failure to comply with the statutory notice requirements; rather, it merely renders a contract renewed without proper notice terminable at will.  See, e.g., Concourse Nursing Home v. Axion Funding Group, Inc., 279 A.D.2d 271, 271 (1st Dep't 2001) (because of failure to provide adequate notice, leases were subject to GOL 5-901, were not renewed for a definite term and could be canceled at any time).

There is no dispute that the Customer Agreement was terminable at will by Vaccariello; in fact, the Customer Agreement expressly gave plaintiff that right.  Moreover, as plaintiff has conceded in his complaint, he was able to cancel his XM Customer Agreement upon

18

request.  (Compl. ¶ 14.)  In sum, XM has already provided to plaintiff the maximum relief he could properly seek pursuant to GOL 5-903.

Moreover, the grounds for dismissal are especially strong here because XM's Customer Agreement offered this right to all subscribers, including plaintiff, prior to this lawsuit, and plaintiff even exercised that right prior to filing his complaint.  Accordingly, it is clear that XM has provided to plaintiff the maximum statutory relief he could recover, that there is no dispute between the parties, and that plaintiff's complaint should be dismissed as moot.  See, e.g., Ward, 455 F. Supp. 2d 262 at 268-69; Weiss v. Fein, No. 01 Civ. 1086, 2002 U.S. Dist. LEXIS 4783, at *9 (S.D.N.Y. Mar. 22, 2002).

     **E.**     **Plaintiff Has Not Alleged That XM's**
               **Purported Conduct Was Materially Deceptive**

In order to sustain a GBL 349 claim, plaintiff must establish that defendant misled him in some material way by a misrepresentation or omission.  See Conboy v. AT&T Corp., 241 F.3d 242, 257-58 (2d Cir. 2001); Andre Strishak & Assocs., P.C. v. Hewlett Packard Co., 300 A.D.2d 608, 609-10 (2d Dep't 2002).  It is the plaintiff's burden to plead and show that defendant's materially deceptive conduct caused the plaintiff's injury.  See Bildstein, 329 F. Supp. 2d at 413-14; Stutman, 95 N.Y.2d at 29; Gale v. Int'l Bus. Mach. Corp., 9 A.D.3d 446, 447 (2d Dep't 2004).  The plaintiff "must allege a material deceptive act or practice" and such "'[a]n act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer.'"  Conboy, 84 F. Supp.2d at 505 (citation omitted); see also Andre Strishak, 300 A.D.2d at 609-10.  Where on the face of the complaint and the undisputed facts, the alleged omission was not materially deceptive as a matter of law, courts may dismiss a GBL 349 claim.  See, e.g., Bildstein, 329 F. Supp. 2d at 414; Conboy 84 F. Supp. 2d at 505.  For example, in Bildstein, a case involving defendant MasterCard's alleged failure to disclose a

service charge for transactions made in foreign currencies, the court dismissed plaintiff's GBL § 349 claim because the plaintiff failed to (1) plead such an omission was material or (2) show that the disclosure of information regarding the service charge would have affected his selection of credit cards. 329 F. Supp. 2d at 412-14.

Here, plaintiff has failed to make <u>any</u> allegation regarding the purported materiality of XM's alleged deceptive omission.  Plaintiff simply states that XM's alleged failure to disclose its renewal policy has injured subscribers by charging them for services extending beyond what he claims is the original term of the contract.  (Compl. ¶¶ 23, 24, 29-31.)  This is not enough to show materiality for GBL 349 claims, particularly where, as here, Vaccariello availed himself of his right to terminate his XM Satellite Radio subscription.  Indeed, plaintiff has not even asserted that disclosure of the allegedly omitted information concerning service continuation and cancellation would have affected his choice to subscribe to XM.[6]  Accordingly, his claim should be dismissed on this deficiency alone.

## IV.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT

To establish an unjust enrichment claim in New York, a plaintiff must demonstrate that:  "(1) defendant was enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  <u>Briarpatch, Ltd. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 306 (2d Cir. 2004).  Unjust enrichment is a quasi-contractual remedy, and one of the "'well-settled principles of New York law'" is that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same

---

[6]    To the extent plaintiff was injured (in having to pay XM $11.83), such injury is not the result of any alleged wrongful conduct by XM, but of plaintiff's failure to abide by his agreement and/or cancel his XM radio subscription in a timely fashion.

subject matter.'" In re First Cent. Fin. Corp., 377 F.3d 209, 213 (2d Cir. 2004) (citation omitted);

see also Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 361-62 (S.D.N.Y. 1998)

(dismissing plaintiff's unjust enrichment claim where purchase agreement contained provision

governing the disputed matter). In this regard, it is impermissible to seek damages in an action

sounding in quasi contract where the parties have fully performed a valid written agreement, "the

existence of which is undisputed, and the scope of which clearly covers the dispute between the

parties." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573,

587 (2d Cir. 2006) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389

(1987)); Spagnola v. Chubb Corp., No. 06 Civ. 9960, 2007 U.S. Dist. LEXIS 21676, at *17-19

(S.D.N.Y. Mar. 27, 2007) (dismissing plaintiff's unjust enrichment claim because "the existence

of an express contract bars this quasi-contractual claim"); New Paradigm Software Corp. v. New

Era of Networks, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (dismissing plaintiff's unjust

enrichment claim because "both parties agree that a valid and enforceable contract exists

between them").

        The existence of the Customer Agreement governing the relationship between

Vaccariello and XM, which fully describes all terms and conditions of that relationship, prevents

the plaintiff, as a matter of law, from establishing the quasi-contractual claim for unjust

enrichment. None of plaintiff's allegations contest the existence of a valid agreement between

the parties or that both parties have fully performed under the contract. The plaintiff admits he

entered into a contract with XM in order to receive XM Satellite Radio (Compl. ¶¶ 6, 9). The

Customer Agreement clearly contains provisions regarding the subject matter in dispute, namely

that the subscription will continue indefinitely until cancelled (Customer Agmt. § 6(a)) and that

plaintiff is able to terminate the service at will (Customer Agmt. §§ 1(a), 6(b)). Both parties

have performed their respective obligations under the contract; in exchange for plaintiff's payment (Compl. ¶ 18), XM provided XM Satellite Radio to plaintiff until plaintiff cancelled the subscription, pursuant to the terms of the Customer Agreement. (Compl. ¶ 15.)

In short, XM supplied to plaintiff an XM Satellite Radio subscription in accordance with the Customer Agreement, and plaintiff is not entitled to receive a benefit without compensating XM. See, e.g., Concourse Nursing Home, 279 A.D.2d at 271 (even though leases subject to New York General Obligations Law § 5-901 were not renewed for a definite term and were cancelable at will by the plaintiff, plaintiff was not entitled to receive the benefit of the leased equipment without compensating the lessor). Accordingly, in no way was XM unfairly or unjustly enriched at plaintiff's expense, and plaintiff was properly charged for the digital radio service provided by XM through and including the date on which plaintiff cancelled his service.

## CONCLUSION

For each of the foregoing reasons, XM's motion to dismiss this action should be GRANTED.

Dated: July 22, 2008
       New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: _____
Kenneth A. Plevan
Jeffrey A. Mishkin
Anthony J. Dreyer
Four Times Square
New York, NY 10036
(212) 735-3000

Attorneys for Defendant
XM Satellite Radio Inc.

781466-New York Server 1A - MSW