**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICHARD VACCARIELLO on behalf of
himself and all others similarly situated,

                  Plaintiff,

      vs.

XM SATELLITE RADIO INC.,

                  Defendant.

08 Civ 5336 (CS)

**<u>CLASS ACTION</u>**

**Oral Argument Requested**

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN  OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS</u>**

**WOLF POPPER LLP**
Lester L. Levy
Michele F. Raphael
Natalie M. Mackiel
845 Third Avenue
New York, New York  10022
212.759.4600

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    I.       STANDARDS ON A MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . -4-

          A.     The Documents Proffered by Defendant's Attorney
                Cannot be Considered on this Motion to Dismiss . . . . . . . . . . . . . . . . . -5-

    II.      PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM UNDER
          GBL § 349 AND THERE IS NO BASIS FOR DISMISSAL
          AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

          A.     Plaintiff Has Amply Alleged the Elements of
                a Claim Under GBL § 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

          B.     Defendant Failed to Comply with GOL § 5-903 . . . . . . . . . . . . . . . . . -10-

          C.     Defendant Does Not Have a "Disclosure Defense"
                to the GBL § 349 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

          D.     Defendant's Pleading and Mootness Arguments Lack Merit . . . . . . . -17-

    III.     PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR UNJUST
          ENRICHMENT AND FOR EQUITABLE AND INJUNCTIVE RELIEF . . -19-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>484 Assocs., L.P. v. Moy</u>,
     No. 06 Civ. 2290 (PAC), 2007 U.S. Dist. LEXIS 15625 (S.D.N.Y. Mar. 5, 2007) . . . . . 7

<u>Associated Press v. Berger</u>,
     460 F. Supp. 1003 (W.D. Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Associated Press v. Riddle</u>,
     496 F. Supp. 119 (E.D. Ark. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

<u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>,
     493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Barkley v. Olympia Mortg. Co.</u>,
     No. 04 CV 875 (RJD)(KAM),
     2007 U.S. Dist. LEXIS 61940 (E.D.N.Y. Aug. 22, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Bell Atlantic Corp. v. Twombly</u>,
     127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Bildstein v. MasterCard Int'l, Inc.</u>,
     329 F. Supp. 2d 410 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Bildstein v. MasterCard Int'l, Inc.</u>,
     No. 03 Civ. 9826 (WHP),
     2005 U.S. Dist. LEXIS 10763 (S.D.N.Y. June 6, 2005) . . . . . . . . . . . . . . . . . . . . . 10, 18

<u>Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.</u>,
     3 N.Y.3d 200 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re Burlington Coat Factory Sec. Litig.</u>,
     114 F.3d 1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Chambers v. Time Warner, Inc.</u>,
     282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

<u>Chemical Bank v. Equity Holding Corp.</u>,
     228 A.D. 2d 338 (1st Dep't N.Y. App. Div. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Cortec Indus., Inc. v. Sum Holding L.P.</u>,
     949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Dime Laundry Service, Inc. v. 230 Apartments Corp.,
    120 Misc. 2d 399 (N.Y. Sup. Ct. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Donald J. Trump Casino Sec. Litig. v. Trumps. Castle Funding,
    7 F.3d 357 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Donald Rubin, Inc. v. Schwartz,
    160 A.D. 2d 53 (1st Dep't N.Y. App. Div. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Faulkner v. Beer,
    463 F.3d 130 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Flaherty v. All Hampton Limousine, Inc.,
    No. 02-CV-4801 (DRH)(WDW),
    2008 U.S. Dist. LEXIS 54321 (E.D.N.Y. July 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 4

Goshen v Mutual Life Ins. Co. of N.Y.,
    98 N.Y.2d 314 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harris v. Adams & Co. Real Estate, Inc.,
    62 Misc. 2d 749 (N.Y. Civ. Ct. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Iconix Brand Group, Inc. v. Bongo Apparel, Inc.,
    No. 06 Civ. 8195 (DCL), 2008 U.S. Dist. LEXIS 51791 (S.D.N.Y. July 8, 2008) . . . . . . 4

I. Meyer Pincus & Assocs. v. Oppenhiemer & Co.,
    936 F.2d 759 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Int'l Audiotext Network, Inc. v. AT&T,
    62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Karlin v. IVF Am.,
    93 N.Y.2d 282 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Labajo v. Best Buy Stores, L.P.,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Leon v. Murphy,
    988 F.2d 303 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Levy ex rel Immunogen Inc. v. Southbrook Int'l Invs., Ltd.,
    263 F.3d 10 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ludl Elecs. Prods Ltd. v. Wells Fargo Fin Leasing, Inc.
    6 A.D.3d 397 (2d Dep't N.Y. App. Div. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

McCarthy v. Dun & Bradstreet. Corp.,
    482 F.3d 184 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McKenzie v. Dow Jones & Co.,
    No. 08 Civ. 3623 (SAS), 2008 U.S. Dist. LEXIS 55387 (S.D.N.Y. July 22, 2008) . . . . . 5

Meckel v. Continental Resources Co.,
    758 F.2d 811 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mobile Diagnostic Testing Servs., Inc. V. TLC Health Care Network,
    19 A.D.3d 1145 (4th Dep't N.Y. App. Div. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mt. Vernon Amusement Co. v. Georgian Restaurant Corp.,
    30 A.D.2d 823 (2d Dep't N.Y. App. Div. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Murphy v. Cadillac Rubber & Plastics, Inc.,
    946 F. Supp. 1108 (W.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

NYDIC/Weschester Mobile MRI Assoc. v. Lawrence Hospital,
    242 A.D.2d 686 (2d Dept. N.Y. App. Div. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
    85 N.Y.2d 20 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Parnes v. Gateway 2000, Inc.,
    122 F.3d 539 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

P&G v. Xetal, Inc.,
    Nos. 04-CV-2820, 04-CV-5225 (DRH)(WDW),
    2006 U.S. Dist. LEXIS 24342 (E.D.N.Y. Mar. 23, 2006) . . . . . . . . . . . . . . . . . . . . . . 4

Penn Group, LLC v. Slater,
    No. 07 Civ. 729 (MHD), 2007 U.S. Dist. LEXIS 50651 (S.D.N.Y. June 13, 2007) . . . . . 4

In re Pfizer Inc. Sec. Litig.,
    No. 04 Civ. 9866 (LTS)(DCF),
    2008 U.S. Dist. LEXIS 50923 (S.D.N.Y. July 1, 2008) . . . . . . . . . . . . . . . . . . . . . . . 4

Prial v. Supreme Court Uniformed Officers Assoc.,
    91 Misc. 2d 115 (N.Y. App. Term. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rapoport v. Asia Elecs. Holding Co.,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rossi v. 21st Century Concepts, Inc.,
    162 Misc. 2d 932 (N.Y. City Ct. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sands v. Ticketmaster-N.Y., Inc.,
    207 A.D.2d 687 (1st Dep't N.Y. App. Div. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sel-leb Mktg., Inc. V. Dial Corp.,
    No. 01 Civ. 9250, 2002 U.S. Dist. LEXIS 15932 (S.D.N.Y. Aug. 27, 2002) . . . . . . . . . 7

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Stewart v. Pension Trust of Bethlehem Steel Corp.,
    12 Fed. Appx. 174 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Stutman v. Chemical Bank,
    95 N.Y.2d 24 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Telephone Secretarial Serv. v. Sherman,
    28 A.D.2d 1010 (2d Dep't N.Y. App. Div. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.,
    179 A.D.2d 592 (1st Dep't N.Y. App. Div. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Vivendi Universal, S.A. Sec. Litig.,
    No. 02 Civ. 5571 (RJH), 03 Civ. 2175 (RJH),
    2004 U.S. Dist. LEXIS 7015 (S.D.N.Y. Apr. 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . 20

Watts v. Jackson Hewitt Tax Service Inc.,
    No. 06-cv-6042 (DLI)(SMG) (E.D.N.Y.  Aug. 16, 2008) . . . . . . . . . . . . . 4, 6, 8, 9, 15, 20

Weiner v. Klais & Co., Inc.,
    108 F.3d 86 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wornow v. Register.com, Inc.,
    8 A.D.3d 59 (1st Dep't N.Y. App. Div. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

Fed. R. Civ. P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.Y. Gen. Bus. Law § 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

N.Y. Gen. Oblig. Law § 5-903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## OTHER AUTHORITIES

Givens, Supp. Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 19, Gen. Bus.
Law §§ 349-350, 2000 Cum. Pocket Part . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## <u>PRELIMINARY STATEMENT</u>

Plaintiff, Richard Vaccariello, submits this memorandum in opposition to defendant XM Satellite Radio, Inc.'s ("Defendant" or "XM") motion to dismiss his complaint. Plaintiff amply alleges that XM engaged in deceptive conduct in violation of N.Y. Gen. Bus. Law § 349 ("GBL § 349") and that XM was unjustly enriched by improperly, automatically renewing Plaintiff's XM satellite radio service contract for another three year term. Plaintiff also amply alleges XM's continuing conduct necessitates equitable and injunctive relief.

Plaintiff paid XM to receive its satellite radio service in his automobile. He paid up-front for three years of service and never received a written contract. Approximately three years later, after he returned his leased vehicle and after his three year satellite radio service contract had expired, XM billed Mr. Vaccariello for another three year period. When he called XM to complain, he was told that his service contract had been automatically renewed for another three year period. XM eventually canceled the service, but refused to waive the charge for the radio service from the date of the automatic renewal until the date Mr. Vaccariello learned of the renewal and complained. Plaintiff never received any warning nor notice that his term of service was going to be automatically renewed and that he would be billed therefore – even though N.Y. Gen. Oblig. Law § 5-903 ("GOL § 5-903") requires that such notice be provided in accordance with the statutory guidelines. As alleged, such conduct by XM is deceptive and misleading in violation of GBL § 349.

Acknowledging that it automatically renewed Plaintiff's satellite radio service contract, XM argues that this Court should dismiss Plaintiff's Complaint based on what its attorney says (i) "is a true and complete copy of XM's Customer Agreement with plaintiff Richard Vaccariello," Exhibit A to the Declaration of Anthony J. Dreyer in Support of Defendant's

Motion to Dismiss ("Exh. A" and "Dreyer Decl.") and (ii) a "true and complete copy of XM's March 21, 2008 letter to plaintiff notifying him that the pre-paid period for his XM radio subscription would renew on April 3, 2008." Exhibit B to the Dreyer Decl. ("Exh. B"). However, neither exhibit is properly authenticated, neither exhibit is incorporated by reference into Plaintiff's Complaint, and neither exhibit supports a judgment in Defendant's favor on its motion to dismiss. The first exhibit, the purported agreement, is undated, unsigned and XM's attorney (with no firsthand knowledge) does not even say that it was given to Plaintiff. In fact, Plaintiff attests that it wasn't. Moreover, the exhibit does not even mention automatic renewal and the "term" of service provided therein is "indefinite," which is itself, misleading, given Plaintiff's three year plan. The second exhibit, which XM's attorney calls a "March 21, 2008 letter to Plaintiff"– is also proferred *sans* personal knowledge that it was ever sent to Plaintiff and/or that it was XM's practice to send such letters. In any event, said letter does not satisfy the requisites of GOL § 5-903. Moreover, the language therein supports Plaintiff's position by stating that the renewal is for a full three year term - and thereby refuting XM's claim that it did not have to comply with GOL § 5-903 because any renewal was for only one month or less. XM also fails to exempt itself from GOL § 5-903 by playing word games to claim that its satellite radio service is not a "service" thereunder. Despite its linguistic gymnastics, Defendant provides radio service to personal property and is subject to GOL § 5-903.

In sum, and for all of the reasons set forth herein, XM has not presented any basis upon which Plaintiff's claims may be dismissed. Thus, Defendant's motion should be denied.[1]

---

[1]Plaintiff maintains that all of his claims are adequately pled. If, however, the Court finds otherwise, Plaintiff respectfully requests that he be given leave to amend.

## STATEMENT OF FACTS

Plaintiff entered into a customer/service provider relationship with Defendant XM on April 3, 2005, whereby XM was to provide satellite radio service in Plaintiff's leased vehicle for three years. Class Action Complaint, dated June 11, 2008 ("Compl."), ¶ 9.

In February 2008, Plaintiff's automobile lease expired and he delivered the car to his dealer. Given that the three years of XM Satellite service expired on April 3, 2008, Plaintiff did not renew or cancel his radio service contract. Compl., ¶ 10.

Plaintiff did not receive any notice from Defendant regarding automatic renewal of his XM service contract. Affidavit of Richard Vaccariello ("Vaccariello Aff."), ¶ 4.

On or about May 9, 2008, Plaintiff received a bill from XM for the amount of $359.64 for a three year service extension. Upon receipt of the bill, he contacted XM, and told the representative that he did not renew his contract. He was informed that XM had automatically renewed the contract. Upon learning this, Plaintiff canceled any continued service on May 9, 2008. Compl., ¶¶ 12-14.

On or about May 15, 2008, Plaintiff received a bill from XM in the amount $11.83 for service during the period from April 4, 2008 through May 10, 2008. Upon receipt of this bill, he again contacted XM and requested that XM credit his account in the amount of $11.83. Defendant refused to credit Plaintiff the $11.83. Plaintiff paid the amount of $11.83 under protest on May 29, 2008, for fear of credit implications. Plaintiff attached a letter to his payment, once again objecting to the charge of $11.83. Compl., ¶¶ 15-18.

Contrary to what is required by New York Law, Defendant does not properly notify Class members that their service contracts will be automatically renewed. Plaintiff and the Class are entitled to recover the amounts charged beyond the contract period to which they originally

consented.

## ARGUMENT

## I.    STANDARDS ON A MOTION TO DISMISS

In deciding a motion to dismiss a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet. Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); In re Pfizer Inc. Sec. Litig., No. 04 Civ. 9866 (LTS) (DCF), 2008 U.S. Dist. LEXIS 50923, at *13 (S.D.N.Y. July 1, 2008).  Questions of fact are not appropriate for disposition under Rule 12(b)(6). Penn Group, LLC v. Slater, No. 07 Civ. 729 (MHD), 2007 U.S. Dist. LEXIS 50651, at *16-18 (S.D.N.Y. June 13, 2007); Flaherty v. All Hampton Limousine, Inc., No. 02-cv-4801 (DRH) (WDW), 2008 U.S. Dist. LEXIS 54321, at *8-11 (E.D.N.Y. July 16, 2008); P&G v. Xetal, Inc., Nos. 04-cv-2820, 04-cv-5225 (DRH) (WDW) 2006 U.S. Dist. LEXIS 24342, at *4-5 (E.D.N.Y. Mar. 23, 2006).  A complaint should not be dismissed if plaintiff asserts "facts allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007); Iconix Brand Group, Inc. v. Bongo Apparel, Inc., No. 06 Civ. 8195 (DLC), 2008 U.S. Dist. LEXIS 51791, at *10 (S.D.N.Y. July 8, 2008); Watts v. Jackson Hewitt Tax Service Inc., No. 06-cv-6042 (DLI)(SMG), slip op. at 8 (E.D.N.Y.  Aug. 16, 2008) quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (a complaint must allege facts that "raise a right of relief above the speculative level, on the assumption that all allegations in the complaint are true [even if doubtful in fact].").   A copy of the Jackson Hewitt decision is annexed as Exhibit A hereto.

## A.    The Documents Proffered by Defendant's Attorney
##      Cannot be Considered on this Motion to Dismiss

The documents annexed to XM's attorney's declaration, are not properly authenticated, they create a host of factual issues, and are not incorporated by reference into the Complaint.

It is well established that a district court ruling on a motion to dismiss may only consider a document if its authenticity is not contested.  "[B]efore materials outside the record may become the basis for a dismissal . . . it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) and McKenzie v. Dow Jones & Co., No. 08 Civ. 3623 (SAS), 2008 U.S. Dist. LEXIS 55387, at *6 (S.D.N.Y. July 22, 2008).  See also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991); Stewart v. Pension Trust of Bethlehem Steel Corp., 12 Fed. Appx. 174, 176 (4th Cir. 2001); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).   In addition,  "[c]ourts have declined to consider unsigned documents in ruling on motions to dismiss." Chambers v. Time Warner, Inc., 282 F.3d 147, 154, n.5 (2d Cir. 2002) (citing, e.g., Murphy v. Cadillac Rubber & Plastics, Inc., 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996) (stating that unsigned letter agreement attached to complaint could not be considered on motion to dismiss because it "does not evidence an agreement between the parties").

Both documents proffered by defense counsel fail this test.  The purported "Customer Agreement with plaintiff Richard Vaccariello," Exh. A, is unsigned, undated and there is no representation by anyone with knowledge that it was ever sent to Plaintiff or that it was even XM's practice to send written agreements to its  subscribers.  On the other hand, Plaintiff, having personal knowledge of the facts, explicitly denies ever having received Exh. A.  Vacarriello Aff., ¶ 3.  XM's attorney does not claim to have, and undeniably lacks, the personal knowledge

necessary to state the documents were sent. <u>Leon v. Murphy</u>, 988 F.2d 303, 309 (2d Cir. 1993), *citing* <u>Meckel v. Continental Resources Co.</u>, 758 F.2d 811, 817 (2d Cir. 1985) ("Under New York law, personal knowledge [of mailing procedures] is required [] to establish regular office procedure.")  Similarly, with respect to Exh. B, the "March 21, 2008 letter to plaintiff," declarant attorney  fails to represent that said letter was ever sent to Plaintiff or even that XM routinely sends out such letters.  Nor is there any evidence of mailing, such as a cover letter or affidavit of mailing.[2]  On the other hand,  Plaintiff clearly states that "[he] did not receive any notice from Defendant regarding automatic renewal of his XM service contract." <u>Compl.</u>, ¶ 11, <u>Vaccariello Aff.</u>, ¶ 4.

In addition to the credibility and factual issues surrounding the exhibits proffered by defense counsel, they are not, and cannot be, incorporated by reference into Plaintiff's Complaint.  "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d at 153, *citing* <u>Cortec Indus., Inc. v. Sum Holding L.P., Co.</u>, 949 F.2d at 47-48 (footnote omitted);  <u>Watts v. Jackson Hewitt Tax Service Inc.</u>, No. 06-cv-6042 (DLI)(SMG), slip op. at 9 (same);  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider a "document integral to or explicitly relied upon in the complaint"); <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 546 n.7 (8th Cir. 1997) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

---

[2] The submission of the "letter" is further suspect given the recently revealed tactics of companies to fabricate "notice letters."  <u>See</u>, <u>e.g.</u>, Gretchen Morgenson, <u>Lender Tells Judge It 'Recreated' Letters</u>, N.Y. Times, Jan. 8, 2008, at C3 (reporting on Countrywide Financial Corporation's practice of fabricating notice documents).

*quoting* In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993).

Plaintiff clearly did not "rely on the terms and effect" of Exh A.  He never saw nor

agreed to Exh A,  Vaccariello Aff., ¶¶ 3 and 5, and there is no reference to it in Plaintiff's

Complaint.  Rather,  Plaintiff's "reference" to a "contract" in his Complaint is merely to

acknowledge his relationship with XM – he accepted  XM's offer to provide satellite radio

service for three years. Chambers v. Time Warner, Inc., 282 F.3d at 154 (declining to incorporate

documents where the parties disagreed as to whether and how they affect the relationship at

issue).

Nor did, or could, Plaintiff have "rel[ied] on the terms and effect" of the purported letter

advising him of an automatic renewal in his Complaint.  Indeed, the basis of his Complaint is

that his contract was renewed without warning.  See 484 Assocs., L.P. v. Moy, No. 06 Civ. 2290

(PAC), 2007 U.S. Dist. LEXIS 15625 (S.D.N.Y. Mar. 5, 2007) ("[T]he Court . . . does not rely at

all on Defendants' evidentiary submissions, as the Complaint does not 'rel[y] heavily upon

[their] terms and effect.'"); Barkley v. Olympia Mortg. Co., No. 04-cv-875 (RJD) (KAM), 2007

U.S. Dist. LEXIS 61940, at *71 (E.D.N.Y. Aug. 22, 2007) ("Because the provenance of this

document is unknown, and [plaintiff] does not explicitly rely on it in her complaint, the Court

declines to consider it on a motion to dismiss.").

In contrast to the papers proffered by defense counsel, the cases cited by Defendant

wherein incorporation by reference was proper concerned documents which were explicitly

referred to in, and/or undeniably formed the bases of, the subject complaints and their

authenticity was not questioned.  Memorandum of Law in Support of Defendant's Motion to

Dismiss ("Defs. Br."), p. 7- 8 *citing*  Int'l Audiotext Network, Inc. v. AT&T, 62 F.3d 69 (2d Cir.

1995) (undisputed stock purchase agreement forming the basis of the antitrust claim); Sel-leb

Mktg., Inc. v. Dial Corp., No. 01 Civ. 9250, 2002 U.S. Dist. LEXIS 15932, at *8 (S.D.N.Y. Aug.

27, 2002) (in an action claiming a breach of a right of first refusal, "[t]here is no rational

argument to be made that the [uncontested] letter agreement [as to plaintiff's interest in

purchasing inventory] is not integral to [the] complaint"); I. Meyer Pincus & Assocs. v.

Oppenhiemer & Co., 936 F.2d 759, 762 (2d Cir. 1991) (allowing incorporation of a prospectus

that was the basis of plaintiff's complaint); Rapoport v. Asia Elecs. Holding Co., 88 F. Supp. 2d

179, 183-84 (S.D.N.Y. 2000) (same); Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs.,

Ltd., 263 F.3d 10, 13 n.4 (2d Cir. 2001) (allowing consideration of documents which were

referred to in the complaint).[3]

## II.  PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM UNDER GBL § 349 AND THERE IS NO BASIS FOR DISMISSAL AS A MATTER OF LAW
### A.  Plaintiff Has Amply Alleged the Elements of a Claim Under GBL § 349

N.Y. Gen. Bus. Law § 349 is a consumer protection statute designed to protect against

"[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the

furnishing of any service in this state" GBL § 349(a).  The scope of the statute "is intentionally

broad, applying 'to virtually all economic activity.'"  Blue Cross & Blue Shield of N.J., Inc. v.

Philip Morris USA Inc., 3 N.Y.3d 200, 205 (2004), quoting Goshen v. Mutual Life Ins. Co. of

---

[3]Fed. R. Civ. P. 12(d) is not an independent basis for consideration of extrinsic material. Defs. Br., p. 9 fn 2.  Rather, that section prevents a Court from converting a motion to dismiss into a motion for summary without giving plaintiff the opportunity to contest material offered by defendant: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  See also Watts v. Jackson Hewitt Tax Service Inc., No. 06-cv-6042 (DLI)(SMG), slip op. at 10 (when defendants offered papers to rebut plaintiff's allegations on a motion to dismiss, "the court decline[d] to transform this motion into one for summary judgment, finding that, without access to additional discovery, the plaintiffs lack sufficient notice to allow them to contest the defendants' disclosures properly.")

N.Y., 98 N.Y.2d 314, 324 (2002) and Karlin v. IVF Am., 93 N.Y.2d 282, 290 (1999). As stated

by the New York Court of Appeals:

> we recognize that section 349 is a broad, remedial statute and that the provision
> creating a private right of action employs expansive language. We are also mindful
> that the Attorney General asks us not to adopt an inflexible rule of proximate
> causation that would limit the tools and remedies available to protect consumers or
> undermine the State's power to redress deceptive consumer practices.

Blue Cross & Blue Shield, 3 N.Y.3d at 207.

As recently recognized by Judge Irizarry of the Eastern District of New York, "Section

349 is 'meant to empower consumers,' especially 'the disadvantaged' and to even the playing

field of their disputes with better funded and superiorly situated fraudulent businesses." Watts v.

Jackson Hewitt Tax Service Inc., No. 06-cv-6042 (DLI)(SMG), slip op. at 12 (citations omitted)

(upholding individuals' GBL § 349 claim against tax preparer Jackson Hewitt based upon

allegations that defendants' pricing was deceptive and misleading). The Court further noted that

"in assessing the adequacy of Section 349 pleadings, courts may take into account the parties'

relative bargaining positions and access to information." Id. at 14.

A sustainable claim under GBL § 349 is stated when plaintiff alleges that "defendant is

engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff

has been injured by reason thereof." Oswego Laborers' Local 214 Pension Fund v. Marine

Midland Bank, N.A., 85 N.Y.2d 20, 25-26 (1995) (citations omitted); Watts v. Jackson Hewitt

Tax Service Inc., No. 06-cv-6042 (DLI)(SMG), slip op. at 12. Scienter is not a required element

of the cause of action and the injured party need not prove reliance. Oswego at 26 ("it is not

necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead"

. . . "the statute does not require proof of justifiable reliance"); See also Small v. Lorillard

Tobacco Co., 94 N.Y.2d 43, 55 (1999) ("Intent to defraud and justifiable reliance by the plaintiff

are not elements of the statutory claim");  Givens, Supp. Practice Commentaries, McKinney's

Cons. Laws of N.Y., Book 19, Gen. Bus. Law §§ 349-350, 2000 Cum. Pocket Part, at 223 (GBL

§ 349 contains "no requirement that an injured party show reasonable reliance on erroneous

statements … in order to obtain relief").   The New York Court of Appeals objectively defines

deceptive acts and practices as  "those likely to mislead a reasonable consumer acting reasonably

under the circumstances." Oswego, 85 N.Y.2d at 26.  "Moreover, it is well established that

omissions may provide the basis for [GBL § 349] claims."  Bildstein v. MasterCard Int'l, Inc.,

No. 03 Civ. 9826 (WHP), 2005 U.S. Dist. LEXIS 10763, at *10 (S.D.N.Y. June 6, 2005), *citing*

Oswego, 647 N.E.2d 741, 744 ("'objective definition of deceptive acts and practices' includes

'misrepresentations or omissions'").

    The Complaint amply alleges that XM's automatic renewal of its radio service contracts

is a misleading and/or deceptive practice directed to consumers which resulted in actual injury to

plaintiff.  See, e.g., Compl., ¶¶ 10, 11, 13, 15, 17, 18, 19, 20 and 21.  In addition to the express

allegations, a claim for a violation of GBL § 349 is clearly cognizable from the four corners of

the Complaint – from plaintiff's allegations that he signed up for three years of service and that

XM automatically renewed his service for another three years without proper notice and would

not provide a credit from the automatic renewal date until the date he uncovered the renewal and

called XM.  Moreover, the alleged conduct is undeniably consumer oriented and is likely to

mislead a reasonable consumer into believing that he or she need only pay for service for the

initial term/plan he or she chooses.  Indeed, Plaintiff, a Certified Public Accountant, Vaccariello

Aff., ¶1, was misled in that he did not know, nor expect that he would have to pay for radio

service beyond his agreed to, pre-paid, three year period..  By automatically renewing his

contract, and refusing to credit his bill, XM forced Mr. Vacarriello to pay for a service he did not

Doc. 161214                                          -10-

even receive.  The longer it takes for a subscriber to discern that he or she is being billed by XM for radio service beyond the initial contract term – i.e. XM may automatically bill a credit card for a renewal – the more that consumer will be damaged.

### B.    Defendant Failed to Comply with GOL § 5-903

GOL  § 5-903, entitled "Automatic renewal provision of contract for service, maintenance or repair unenforceable by contractor unless notice thereof given to recipient of services," requires that service providers notify service recipients before they automatically renew service contracts:

> a contract for service maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, **at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.**

GOL § 5-903. (Emphasis added.)

"The words 'service, maintenance or repair' ... are to be generously read . . .[t]hus, the statute has been applied to a variety of service contracts." NYDIC/Weschester Mobile MRI Assocs. v. Lawrence Hospital, 242 A.D.2d 686, 687 (2d Dep't N.Y. App. Div. 1997) (applying GOL § 5-903 to a contract to provide and maintain a mobile MRI in a hospital).  See also Telephone Secretarial Serv. v Sherman, 28 A.D.2d 1010 (2d Dep't N.Y. App. Div. 1967) (applying statute to a telephone answering service contract);  Associated Press v. Riddle, 496 F. Supp. 119 (E.D. Ark. 1980) (GOL § 5-903 applicable to a contract for the provision of wire services to a radio station and noting that "cases [ ] suggest the liberality with which the New

York courts have applied the[] statute[].); <u>Associated Press v. Berger</u>, 460 F. Supp. 1003 (W.D. Tex. 1978) (same); <u>Dime Laundry Service, Inc. v. 230 Apartments Corp.</u>, 120 Misc. 2d 399 (N.Y. Sup. Ct. 1983) (contract to supply and service coin-metered laundry equipment is governed by Section 5-903); <u>Mt. Vernon Amusement Co. v. Georgian Restaurant Corp.</u>, 30 A.D.2d 823 (2d Dep't N.Y. App. Div. 1968) (contract to install, operate and service a vending machine for sale of cigarettes is encompassed by statute); <u>Harris v. Adams & Co. Real Estate, Inc.</u>, 62 Misc. 2d 749 (N.Y. Civ. Ct. 1970) (statute applicable to general management service agreement). Purely personal services have been excluded from GOL 5-903. <u>Prial v. Supreme Court Uniformed Officers Ass'n.</u>, 91 Misc. 2d 115 (N.Y. App. Term. 1977) (GOL § 5-903 inapplicable to an attorney retainer agreement); <u>Donald Rubin, Inc. v. Schwartz</u>, 160 A.D. 2d 53 (1st Dep't N.Y. App. Div. 1990) (statute inapplicable to personal services contract for provision of consulting and administrative services to employee benefit plan).

Defendant XM provides radio satellite service "to or for" customers' radios – their personal property – just as an answering service was found to render the applicable service "to or for" a telephone communications system, and just as a wire news service was found to render service to a radio station. <u>Telephone Secretarial Serv. v. Sherman</u>, 28 A.D.2d at 1011; <u>Associated Press v. Riddle</u>, 496 F. Supp. 119. In <u>Associated Press v. Riddle</u>, the court invalidated an automatic renewal of Associated Press' provision of its news content service to defendant's radio station absent compliance with GOL § 5-903. <u>Id</u>. The service referred to in the statute is not limited to physical maintenance as Defendant would like this Court to believe.

Albeit obligated to comply with the statutory notice requisites of GOL § 5-903, Defendant failed to do so. Even assuming *arguendo*, that XM sent the "letter" its attorney puts forth, the purported notice was neither sent within the proper time frame, nor in the proper

manner.  Plaintiff's three-year service subscription to XM radio was to terminate on April 3,

2008, and notice "at least fifteen days and not more than thirty days previous" would have had to

have been delivered to Plaintiff between March 4, 2008 and March 19, 2008 – the Exh. B

"letter" is dated March 21, 2008.  Moreover, Defendant does not even claim that such "notice"

was served personally, or by certified mail.  If the purported "letter" had been properly served,

there should be some record of the service and  Defendant makes no mention of any such

evidence.[4]

     Given its failure to comply with the statute, Defendant attempts to exempt itself from

GOL § 5-903 by arguing that its satellite service is not a service "to or for any real or personal

property."  This argument is meritless.  In so arguing, Defendant twists itself into verbal knots by

claiming, "the sole purpose of plaintiff's Customer Agreement with XM is for XM to provide

and plaintiff to receive access to XM's digital radio signal and programming," Defs. Br., at 12,

and then arguing that XM does not provide service to personal property because XM "expressly

disclaims responsibility for servicing or maintaining Vaccariello's car stereo." Defs. Br., at 12.

Defendant cannot avoid responsibility to its customers by playing word games.  XM does not

repair radios.  XM does not provide radios.  It provides satellite radio service to radios – personal

property. See, supra, p. 12.

     Defendant's reliance upon Mobile Diagnostic Testing Servs., Inc. V. TLC Health Care

Network, 19 A.D.3d 1145 (4th Dep't N.Y. App. Div. 2005) is entirely misplaced.  As determined

---

[4]The failure of a defendant to comply with disclosure requirements set forth in New York statutes, itself, has been deemed to constitute an unfair and deceptive business practice under GBL § 349.  Rossi v. 21st Century Concepts, Inc., 162 Misc. 2d 932, 938 (N.Y. City Ct. 1994) ("the failure of [defendant] to comply with the disclosure requirements of Personal Property Law 428 regarding cancellation and refund rights also constitutes an unfair and deceptive practice under General Business Law § 349.").

by the court, the contract therein primarily concerned the personal service of administering

echocardiograms to patients – not service to personal property.  The other cases Defendant relies

upon, Prial, supra, and Rubin, supra, p. 12, likewise concern personal service contracts rather

than service to personal property.  In contrast, the satellite service offered by Defendant is the

service covered by GOL § 5-903 and XM's automatic renewal without notice is precisely the

evil the statute seeks to prevent.[5]

Defendant's further attempt to exempt itself from GOL § 5-903 by arguing that its

automatic renewal falls within the one-month-or-less exception is likewise meritless. As set forth

in both, XM's May 9, 2008 bill to Plaintiff, Compl. ¶ 12, and in XM's "letter" annexed to its

attorney's declaration, Exh. B to Dreyer Decl., the renewal period was for three years.

Recognizing that it does not qualify for the one month or less statutory exemption on its face,

Defendant argues that it "should" be entitled to the exemption because its agreement can be

canceled.  To the contrary, the statute requires that statutory notice is required unless the renewal

term is for one month or less.  There is no further exception for termination/cancellation.

Moreover, absent valid notice of the automatic renewal (and the right to cancel which is not in

the "letter") the fact that the agreement can be canceled is of no value.  Subscribers may not

become aware of the renewal until months, or even years later, if at all.  XM cannot rewrite the

law to shield itself from liability.

### C.    Defendant Does Not Have A "Disclosure Defense" to the GBL § 349 Claim

The "contract" proffered by defense counsel does not cure XM's allegedly deceptive

---

[5] Defendant's repeated references to small businesses as the protected class under GOL § 5-903 is also misplaced.  GOL § 5-903 (1) provides "As used in this section, "person" means an individual, firm, company, partnership or corporation."

conduct.  First, as detailed above, there is no evidence that Plaintiff ever received the undated, unsigned "contract" annexed to Defendant's lawyer's declaration, and such "agreement" is not properly considered on this motion.

However, even if this Court were to consider the document, it does not disclose that the service contract is going to be automatically renewed.  To the contrary, the portions cited by Defendant, namely, that the term is "indefinite and Service will continue until canceled" and that the subscriber will continue to pay for service until he or she notifies XM, Defs. Br., p.16, are themselves misleading given Plaintiff's clear and undisputed three year contract for satellite service.  XM cannot offer and accept payment for a finite time period (here, three years), then insist that service is "indefinite" and continue to charge subscribers after the finite time period.  Thus, even looking at the "contract," reasonable consumers, such as Mr. Vacarriello are likely to be deceived and misled if they agree to a finite plan but are held responsible for an "infinite" plan.  This is especially egregious when automatic billing is chosen – subscribers will be billed *ad infinitim* unless they discern that they are being billed by XM beyond their agreed-to terms.  XM will not refund charges for the period from the renewal date until they find out about the renewal and call to complain.   Hence, with and without  its "contract," XM is deceiving subscribers into paying for periods in excess of those for which they are signing up.  See Watts v. Jackson Hewitt Tax Service Inc., No. 06-cv-6042 (DLI)(SMG), slip op. at 16 (rejecting defendant tax preparer's disclosure defense because its proffered fee disclosures together with its practices "undermine the ability of reasonable customers to determine the true meaning of the minimum posted fees".).

The unauthenticated "letter" proffered by defense counsel also fails to cure Defendant's alleged deceptive conduct.  As previously noted, there is no evidence tending to show that the

purported "letter" was ever sent to Plaintiff and/or that XM had a practice to send such letters, and said exhibit B does not satisfy the timing and service requisites of GOL § 5-903 – which the New York Legislature deemed necessary to protect service recipients when a provider automatically renews their contract. Nor does the supposed letter advise any intended recipient that they may cancel the renewed three-year contract.

In light of the foregoing and Plaintiff's allegations, a jury may reasonably find that Defendant engaged in misleading and deceptive conduct. The papers put forth by Defendant create, rather than dispel, factual issues which are not properly resolved on this motion to dismiss.

The cases Defendant cites in support of its argument that its purported disclosures (Exh. A. and Exh. B) mandate dismissal of Plaintiff's GBL § 349 claim are factually inapposite to the case at bar. In Wornow v. Register.Com, Inc., 8 A.D.3d 59 (1st Dep't N.Y. App. Div. 2004), in addition to finding that GOL § 5-903 did not apply to defendant's provision of internet domain names, based upon the facts therein, the Court found that defendant had provided ample notice to plaintiff of its renewal of plaintiff's domain rights. Id. at 60.[6] Ludl Elec. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc. 6 A.D.3d 397 (2d Dep't N.Y. App. Div. 2004), a two paragraph decision with no facts, is of little value. The plaintiff therein apparently complained that defendant engaged in a deceptive act simply by including an automatic renewal provision in the parties'

_____

[6]"Based on the complaint, documentary evidence and plaintiff's concessions . . it appears the parties entered into an agreement . . .that all notices required by the agreement could be given by e-mail . . that plaintiff was required to keep his e-mail address with defendant up to date, but failed to do so . . [defendant] notified plaintiff by e-mail of each expiring registration and of his right to cancel the agreement; and also notified plaintiff by e-mail of each completed renewal . . . so far as appears [any claim by Plaintiff that he never received emails] was only because he failed to update his e-mail address with defendant . . [w]e perceive nothing deceptive." Id. at 60.

lease for business equipment.  The Court held that such conduct could not violate  GBL § 349

because the leases at issue were not "consumer-oriented" and that inclusion of the renewal was

not, itself, deceptive because it was clearly disclosed in the parties' lease.  Apparently, the

plaintiff did not allege deception based on  defendant's failure to follow the notice provisions of

N.Y. Gen. Oblig. Law § 5-901 – applicable to automatic renewal provisions in lease agreements

– but instead brought a separate claim for violation of that statute and that was dismissed because

"plaintiff [] knowingly and willingly continued to accept the benefit of the leased equipment

without compensating the defendant lessor."  Id. at 398.

Here, there was no such disclosure nor notice of the automatic renewal provision – which

is the basis of Plaintiff's complaint.  If discovery reveals that Defendant had disclosed the

automatic renewal provision and provided proper notice thereof, it may move for summary

judgment at an appropriate time.  There is no basis upon which to dismiss the Complaint at this

stage.[7]

### D.    Defendant's Pleading and Mootness Arguments Lack Merit

Defendant incorrectly claims that Plaintiff's GBL § 349 claim should be dismissed for

failure to allege materiality because he did not claim that the alleged deceptive conduct would

have caused him not to enter the service contract.  Where plaintiff alleges defendant's deceptive

act caused him to pay amounts he believed were not required, plaintiff does not have to allege

that he would not have otherwise entered into the transaction.  Stutman v. Chemical Bank, 95

---

[7]See also Defs. Br., p. 15 citing cases wherein allegedly deceptive practices were undisputably found to have been clearly and timely, disclosed. See e.g. Sands v. Ticketmaster-N.Y., Inc., 207 A.D.2d 687 (1st Dep't N.Y. App. Div. 1994) (plaintiff's GBL § 349 claim based on service fees dismissed because defendant disclosed challenged service charge fees prior to ticket sale).

N.Y.2d 24 (2000).  Moreover, Plaintiff clearly alleged that Defendant's automatic renewal

practice caused him damages. Compl., ¶¶ 15-18, 20. See Stutman at 29.  Defendant's argument

that Plaintiff must use magic words is unsupported.

Defendant's reliance on Bildstein v. MasterCard Int'l, Inc., 329 F. Supp. 2d 410

(S.D.N.Y. 2004) is both misplaced and misleading.  In that case, Bildstein claimed that

Mastercard violated GBL § 349 by failing to disclose a foreign currency exchange fee.  Looking

to the Federal Trade Commission Act  for guidance as to how to plead under GBL § 349, the

Court found that plaintiff did not adequately plead materiality and/or how defendant's action

affected his choice in credit cards and gave plaintiff leave to replead.  However, in the

subsequent decision, Bildstein v. MasterCard Int'l, Inc., No. 03 Civ. 9826 (WHP), 2005 U.S.

Dist. LEXIS 10763, at *10-11 (S.D.N.Y. June 6, 2005), which Defendant does not discuss or

provide, Judge Pauley denied defendant's motion to dismiss, finding that plaintiff had adequately

pled deception under GBL § 349 by alleging that MasterCard withheld material information

from cardholders – without any allegation as to what plaintiff would have done had the fee been

disclosed.  Here, just as in Bildstein, 2005 U.S. Dist. LEXIS 10763, Plaintiff alleges a material

omission – namely, XM withheld the fact that it was going to automatically renew Plaintiff's

contract.  The gravity of the omission is heightened by XM's statutory obligation to provide

notice of the automatic removal.

Nor is Plaintiff's GBL § 349 claim moot.  To the contrary, Plaintiff is seeking, and is

entitled to, damages in the amount he was forced to pay for the period after his contract expired.

The fact that XM canceled his service going forward does not rectify XM's conduct nor diminish

the fact that it improperly forced Plaintiff to pay for service beyond that to which he agreed.

Defendant's repeated refusal to excuse the $11.83 charge for said period and applying the same

practice to thousands of other New York customers, pushed Plaintiff to file this lawsuit. Moreover, this automatic renewal practice without notice is continuing such that Plaintiff's claim for injunctive relief is far from moot.

Similarly, the Complaint presents a case or controversy – whether defendant improperly renewed Plaintiff's agreement.  Defendant's argument that there is no controversy because the agreement was terminable at Plaintiff's election – is just that, argument.  Defendant is rearguing its position that it did nothing wrong in renewing the contract.  To the contrary, as alleged, XM improperly renewed Plaintiff's contract for a full three year term.  The fact that XM canceled the contract when it was caught, does not absolve it from liability.  Absent the challenged renewal, any relationship that existed between XM and Plaintiff terminated on April 3, 2008.  Any amount charged/paid beyond that date is improper and must be returned to Plaintiff.

## III.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR UNJUST ENRICHMENT AND FOR EQUITABLE AND INJUNCTIVE RELIEF

A cause of action for unjust enrichment requires the court to determine whether a party holds property 'under such circumstances that in equity and good conscience he ought not to retain it." Chemical Bank v. Equity Holding Corp., 228 A.D.2d 338, 339 (1st Dep't N.Y. App. Div. 1996) (citation omitted).  See also Ultramar Energy, Ltd. v. Chase Manhattan Bank, N.A., 179 A.D.2d 592, 593 (1st Dep't N.Y. App. Div. 1992) (that defendant "retained proceeds to which it was not entitled" adequately pled unjust enrichment).  This is a prototypical case thereof.   Defendant knowingly, and automatically renewed Plaintiff and Class Members' service contracts, forcing  Plaintiff and class members to continue to pay  XM.  Plaintiff was paying for a service he did not even have.

Defendant's reliance on its purported contract to argue that there can be no unjust

enrichment claim puts the cart before the horse.  Defs. Br., p. 21 ("[t]he existence of the

Customer Agreement governing the relationship between Vaccariello and XM, which fully

describes all terms and conditions of that relationship, prevents the plaintiff, as a matter of law,

from establishing the quasi-contractual claim for unjust enrichment.  None of plaintiff's

allegations contest the existence of a valid agreement between the parties . . . .")  As detailed

above as to why the "contract" is not properly incorporated by reference or otherwise considered

on this motion to dismiss, Plaintiff has not alleged the existence of a written contract, he is not

aware of a written contract, and his only agreement was to pay for and receive three years of

service.   Moreover, in addition to assuming the existence and validity of a contract, Defendant is

also assuming the existence and validity and enforceability of an automatic renewal provision.

To the contrary, Plaintiff alleges that his contract with XM – his payment in exchange for service

– ended upon the expiration of his three year term.

        It is well established that  "[w]hen there is a bona fide dispute as to the existence of a

contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment

claim may be alleged alongside a breach of contract claim."  Labajo v. Best Buy Stores, L.P.,

478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007), citing In re Vivendi Universal, S.A. Sec. Litig.., No.

02 Civ. 5571 (RJH), 03 Civ. 2175 (RJH), 2004 U.S. Dist. LEXIS 7015, at *40-42 (S.D.N.Y. Apr.

22, 2004).  Hence, until a contract governing this dispute is found to exist, the unjust enrichment

claim must stay.  See Watts v. Jackson Hewitt Tax Service Inc., No. 06-cv-6042 (DLI)(SMG),

slip op. at 27 (rejecting defendant tax preparer's argument that plaintiffs' unjust enrichment

claim should be dismissed because there was some contract between the parties: "Even assuming

the existence of some kind of contract, oral or written, setting forth the terms of the tax return

preparation service, the court is unwilling to rule out an unjust enrichment claim at this stage of

the proceedings because of defendants' consistent efforts at obscuring what the terms of the contract may be, especially the schedule of fees pertaining thereto . . . The nondisclosures make it difficult to discern what was bargained for.")

Unless and until this Court finds that Plaintiff's receipt of satellite service was properly automatically renewed, any relationship between the parties ended on April 3, 2008 – the expiration of the original term.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff has stated valid claims for the violation of N. Y. Gen. Bus. Law § 349, for unjust enrichment, and for equitable and injunctive relief and Defendant has failed to provide any basis upon which such claims may be dismissed.  Thus, Plaintiff respectfully requests that Defendant's motion be denied.

## <u>ORAL ARGUMENT REQUESTED</u>

Plaintiff respectfully requests oral argument on the matters addressed herein.


Dated: New York, New York
August 20, 2008

WOLF POPPER LLP

  s/  Michele F. Raphael
Lester L. Levy
Michele F. Raphael
Natalie M. Mackiel
845 Third Avenue
New York, New York  10022
212.759.4600

*Attorneys for Plaintiff and the Class*

## PROOF OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action.  I am employed with Wolf Popper LLP, whose offices are located in the City and State of New York.  My business address is: 845 Third Avenue, New York, NY  10022.

That on August 20, 2008, via ECF, I served the foregoing documents entitled: MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS in this action, in particular on the following counsel for Defendant:

Kenneth Alan Plevan
Anthony Joseph Dreyer
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
212-735-3000
Fax: 917-777-3410
Email: kplevan@skadden.com
        adreyer@skadden.com


*Counsel for Defendant XM Satellite Radio Inc.*


BY ELECTRONIC MEANS:  I caused the above-referenced document to be uploaded onto the ECF system for the United States District Court, Southern District of New York.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct.


Executed on August 20, 2008, New York, New York.

s/ Michele F. Raphael

Michele F. Raphael

**Exhibit A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                                   :
DANA WATTS and YADIRA MOSQUERA, on  :
behalf of themselves and all others similarly situated,  :
                            Plaintiffs,             :
                                                   :
                                                   :
                                                   :                 **Memorandum and Order**
            - against -                            :
                                                   :                 06-cv-6042 (DLI)(SMG)
JACKSON   HEWITT   TAX   SERVICE   INC.,  :
JACKSON HEWITT INC., TAX SERVICES OF  :
AMERICA, INC., MAP COMPUTAX NY, INC.  :
MANDEEP SOBTI, and ANJEET SOBTI,       :
                                                   :
                            Defendants.            :
                                                   :
                                                   :
--------------------------------------------------------------- x
**DORA L. IRIZARRY, United States District Judge:**

      Plaintiffs Dana Watts and Yadira Mosquera, on behalf of themselves and other similarly-situated customers of Jackson Hewitt Tax Services, Inc. ("the Company"), brought this action seeking damages and injunctive relief for defendants' alleged deceptive pricing practices in their sale of tax return preparation services and related financial products. Plaintiffs name as defendants, the Company and two of its subsidiaries, Jackson Hewitt, Inc. (the "franchisor") and Tax Service of America, Inc. (collectively "the Company Defendants"), along with Map Computax NY, Inc., an agent of the Company in New York, its owner Mandeep Sobti, and Anjeet Sobti, a Jackson Hewitt franchisee (the latter trio collectively "the Franchisee Defendants"). The two sets of defendants separately moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all of five causes of action under the New Jersey Consumer Fraud Act ("NJCFA"), the New York General Business Law ("NYGBL"), the New York City Administrative Code ("City Code") and common law for fraud and unjust enrichment. Due to the similarity of the motions,

the court considers them in tandem.  For reasons set forth below, the motions to dismiss are granted as to the plaintiffs' NJCFA claim, but denied as to the others.

I.     **Facts**

The following facts drawn from the complaint are deemed plausible for the purpose of this motion unless otherwise noted.

A.     **The Parties**

The Company, a publicly-traded corporation based in Parsippany, New Jersey, is the second largest professional income tax return preparation service in the United States.  It has more than 6,000 directly-owned and franchised offices that prepared 3.7 million income tax returns in fiscal year 2006.[1]   (Compl. ¶ 11).  Through its franchisor, the Company provides franchisees with training, administrative support, access to its proprietary computer tax return preparation software, and monitors their quality of customer service, accuracy of tax returns, office appearance and personnel training.  (*Id*. ¶¶ 16-17).  In return, the Company collects from each franchisee a franchise fee along with royalties and advertising fees equal to a portion of the franchisee's revenues.  (*Id.* ¶ 15).

Mandeep Sobti is the owner of Map Computax NY, Inc., a company headquartered in New York, which has entered into a number of franchise agreements with the franchisor. (Compl. ¶¶ 18, 20).  He and his wife, defendant Anjeet Sobti, own and operate more than a dozen Jackson Hewitt franchises in New York and New Jersey, including the office in Brooklyn where both of the named plaintiffs purchased tax return preparation services and related financial products in the spring of 2005.  (Compl. ¶¶ 20-21, & 60 and at pp. 36-38)

---

[1]     The Company manages its franchised offices through defendant Jackson Hewitt, Inc., a wholly-owned subsidiary, and its directly-owned offices through Tax Services of America, Inc., a wholly-owned subsidiary of Jackson Hewitt, Inc.  (Compl. ¶¶ 12-13).

Plaintiffs Dana Watts and Yadira Mosquera are both residents of New York whose 2004 federal and state income tax returns were prepared and filed by the Jackson Hewitt office at 439 Knickerbocker Avenue in the Bushwick section of Brooklyn. (Comp. ¶¶ 6-7). They complain of being deceived by misleading minimum prices and being overcharged by undisclosed fees that were hidden in their non-itemized general tax return preparation bill.

**B.    Defendants' Tax Return Preparation Service and Related Financial Products**

Defendants promoted the affordability of their tax return preparation services through the Company's website and fliers in Jackson Hewitt offices. (Compl. ¶ 24). The fliers posted minimum fees to prepare federal and/or state income tax returns. The minimum fees were divided according to Long Form and Short Form returns. (*Id.* ¶¶ 25, 26). Long Form returns are for customers who need to itemize deductions and report property or investment income, while the simpler, less costly Short Form returns are for customers who do not. (*Id.* ¶ 48). According to the complaint, the defendants' posted minimum fees were $27 for a New York State ("NYS") Long Form and $22 for an NYS Short Form. (Compl. ¶ 62).[2] These minimum fee fliers also offered a caveat that the posted fees may vary according to the complexity of the tax return and the number of schedules and tax forms required. The Company's website noted that tax preparation fees vary with the "complexity" of tax returns, with more complex returns taking more time to process and therefore costing more. The website referred customers to local offices for more specific information. (*Id.* ¶ 26).

Customers were given a general bill that contained a single, non-itemized charge called the Tax Preparation Fee. The bill did not disclose to customers, the fees and charges that

---

[2]    In their motion to dismiss, the defendants rebutted these posted price figures with a minimum fee flier dated January 2005. (*See* Declaration of Felicia S. Ennis in Support of Motion to Dismiss (ECF Dkt. Entry No. 29), Exh. D). It lists $40 for NY Short Form and $49 for NY Long Form. *See also infra* §I.D for discussion of defendants' factual rebuttal.

contributed to the total Tax Preparation Fee. (Compl. ¶ 46). Both plaintiffs were charged more than the posted minimum fees for the preparation of their income tax returns. Neither received an itemized breakdown of their Tax Preparation Fee.

The plaintiffs did not pay for their tax return preparation service out of pocket. They purchased financial products marketed by defendants that enable customers to pay for the cost of preparing their tax returns with their eventual tax refunds.

The Accelerated Refund Check ("ACR") allows customers who do not have a personal bank account to receive their tax refund from the Internal Revenue Service ("IRS") via electronic direct deposit instead of waiting for the refund check to arrive by mail. For an application fee of $75 and a bank fee of $25, the Company arranges with a third-party bank to create a temporary bank account in the customer's name to receive the direct deposit. Once the IRS electronically deposits the tax refund into this bank account, usually about two weeks after the tax return is filed, the bank would then deduct its fees and the defendants' fees from the deposit, issue the remainder in a check to the customer, and close the bank account. (Compl. ¶¶ 40-46).

The Refund Anticipation Loan ("RAL") enables customers to borrow against their anticipated tax refund before it is issued by the IRS. These loans give customers even faster access to their tax refund than the ACR, albeit with an extra finance charge. The Company arranges for a third-party bank to issue an advance on all or a portion of the customer's estimated tax refund return. The advanced money is usually lent to the customer a day or two after the tax return is filed. The principal of this loan, along with a $75 application fee, a $25 bank fee, the finance charge equal to 3% of the principal and the defendants' Tax Preparation Service Fee are paid for by the tax refund about two weeks later. (Compl. ¶¶ 30-35). The 3% finance charge on these short-term, low-risk loans translates to annualized interest rates that can exceed 300%. (*Id*.

4

¶¶ 35-36, 59).  RALs are subject to strict state and local regulation that require the fees for this product to be separately disclosed from the Tax Return Preparation Fee so consumers can readily discern the true cost of these financial products.

### C.    The Plaintiffs' Factual Allegations

In the complaint, the plaintiffs contend that they and similarly-situated customers were defrauded by defendant's deceptive practices, which: (1) charged an automatic 15% "Multiplier Fee" above the posted minimum fees; (2) charged them for the more expensive NYS Long Form despite their eligibility to file cheaper Short Form returns; and (3) buried additional "hidden" fees for the financial products into the Tax Preparation Fee when these fees ought to have been separately disclosed. (Compl. ¶ 37).

In support of these allegations, plaintiffs referred to the defendants' own itemized breakdowns of two other customers' Tax Preparation Fees.  (*See* Compl. ¶¶ 28, 45).  These breakdowns were obtained from computer screens of Jackson Hewitt employees running the Company's proprietary software, and summarized in the complaint.[3]  Both summaries contain a line item showing a 115% multiplier and a corresponding charge of 15% applied to each customer's tax preparation charges.  For one of the customers, the complaint compared defendants' internal breakdown of the Tax Preparation Fee with the general non-itemized bill given to the customer.  The comparison reveals that the total amount charged on the general bill was $25 more than the total owed according to the defendants' internal itemized accounting. (*See* Compl. ¶ 45).  Plaintiffs attribute this difference to a "hidden" $25 financial product fee that defendants added to the Tax Preparation Fee of the general bill.  The complaint does not provide

---

[3]    The complaint does not specify whether these Jackson Hewitt employees were in the employ of the Company Defendants or the Franchisee Defendants.

factual assertions that support or explain the allegation that the customers were charged for the NYS Long Form when in fact they were eligible for the NYS Short Form.

The complaint also alleges that the defendants trained their employees to avoid giving itemized breakdowns of the Tax Preparation Fee so customers would not notice the hidden fees that were added to the Tax Preparation Fee.  (Compl. ¶¶ 38, 52).  Defendants made it costly for customers to obtain estimates of what their tax preparation bill would be prior to committing to buy the defendants' services.  Employees were trained to demand a customer's Federal W-2 Form before agreeing to give an exact price quote.  Customers who provided their W-2 forms were given a non-itemized price quote, but if they declined the defendants' services, they were charged a previously undisclosed $25 "hostage fee" for the return of their Federal Form W-2.  (Compl. ¶¶ 56-57).  Plaintiffs complain that the combined effect of the defendants' non-disclosure of its fees and the difficulty in obtaining estimates made customers less able to compare the defendants' posted minimum prices with those of competitors. (Compl. ¶ 89).

The defendants did not provide an itemized accounting of the plaintiffs' tax preparation bill.  The two plaintiffs gave the following accounts of their bills in the complaint:

Table 1: Plaintiffs' itemized breakdown of their bills

| Fee item | Dana Watt's bill | Yadira Mosquera's bill |
|---|---|---|
| Tax Return Preparation Fee | $130 | $212 |
| New York State Long Form | $27* | $27* |
| Federal Form | $57* | $57* |
| Non-dependent (head of household) fee | $7* | |
| Child and Dependent Care Credits | - | $72* |
| Unemployment Insurance compensation | - | $6* |
| Hidden RAL fee | $25* | $25* |
| Hidden ACR fee | - | $25* |
| Gold Guarantee | $30 | - |
| Documentation Fee for RAL and ACR Applications | $75 | $75 |
| Bank Processing Fee for RAL and ACR | $35 | $35 |
| Finance Charge for RAL | $42 | $115 |

| Total | $312 | $437 |
|-------|------|------|

*denotes charges not disclosed in defendants' general bill.
(Compl. ¶¶ 59, 60).

These accounts do not appear to mention the 15% multiplier that the defendants are alleged to have assessed automatically on every customer.  (Compl. ¶ 28).  The breakdown of the four undisclosed items in Watts' $130 Tax Preparation Fee adds up to only $116.

### D.     Defendants' Partial Factual Rebuttal

The Franchisee Defendants, in support of their motion to dismiss, selectively disclosed certain facts about their business practices and the tax returns they prepared for the two plaintiffs to rebut some of the allegations in the complaint. They acknowledge applying a "Multiplier Fee" during the "peak season," but insist that the multiplier fee is factored into the posted minimum fee for "the corresponding time period." (Ennis Decl. ¶ 15).  They provided a copy of a minimum fee flier from January 2005 with minimum fee figures that differ from the plaintiffs' figures. (*See* Ennis Decl. Exh. D, *supra* note 2).[4]

They also pointed to a number of purported inaccuracies in the plaintiffs' itemized account of their Tax Preparation Fees.  For Watts, these include the failures to include a "head of household" fee, a W-2 filing fee, a fee for New York State public employee retirement contribution, and a fee for NY school tax credit. (Ennis Decl. ¶ 11). For Mosquera, they note that she did not account for a W-2 filing fee, a fee for NY school credit, a "$25 Reject Fee" for the submission of her return after it was initially rejected by the IRS, and the purchase of a "Money Now Loan" (*Id*. ¶¶ 13, 14, 26).  The Franchisee Defendants do not indicate how much the missing amounts are, nor have they disclosed the actual itemized breakdown of the plaintiffs' tax preparation fees.

---

[4]     The Company defendants also produced an identical copy of the minimum fee flier in their motion to dismiss.  (*See* Declaration of Douglas A. Rappaport (ECF Dkt. No. 25), Exh. B).

## II.    Discussion

The Complaint alleges that the Defendants' deceptive pricing practices and business conduct violated the NJCFA, N.J. Stat. Ann. § 56:8-1, *et seq.*; the NYGBL § 349; City Code § 20-741.1; and constituted common law fraud.  Plaintiffs also allege that defendants were unjustly enriched by their deceptive pricing scheme. Defendants moved to dismiss all claims for failure to state a claim.

### A.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court retired the standard set forth half a century ago in *Conley v. Gibson*, that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of the requirement that plaintiff plead enough facts to "state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. 1955, 1968-69, 1974 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  Pursuant to *Twombly*, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 1964-65 (citations omitted). The Second Circuit has interpreted the foregoing language to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, however, the complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). A document is "integral" to the complaint where "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153 (citations omitted). "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id*. (emphasis in original). The court may also consider "matters of which judicial notice may be taken." *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993); Fed. R. Evid. § 201(b).

Plaintiffs are harmed when material outside the complaint is considered on a motion to dismiss because they lack notice that such consideration is taking place. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). Rule 12(d)'s conversion requirement remedies this problem by "deter[ring] trial courts from engaging in fact finding when ruling on a motion to dismiss and ensur[ing] that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." *Id*. Accordingly, where there is actual notice by the opposing party of all the information in the movant's papers, the necessity to convert a motion to dismiss to one for summary judgment is largely dissipated. *Chambers*, 282 F.3d at 153.

As noted in Section I.D, *supra*, defendants introduced additional facts in their motion papers to rebut or undermine plaintiff's allegations in the complaint. While, some of these facts are referenced in or are integral to the complaint, the court declines to transform this motion into one for summary judgment, finding that, without access to additional discovery, the plaintiffs lack sufficient notice to allow them to contest the defendants' disclosures properly.[5]

**B.    New Jersey Consumer Fraud Act**

The complaint presents causes of action under the consumer protection statutes of both New York (NYBGL § 349) and New Jersey (NJCFA). Defendants point to conflicting provisions under the two statutes and contend that choice of law principles, among other reasons, should warrant the dismissal of the New Jersey law claim.[6] A federal court sitting in diversity normally applies the choice of law rules of the state in which it is located. *In re Rezulin Prod. Liab. Litig.*, 392 F. Supp. 2d 597, 606 n.61 (S.D.N.Y. 2005)(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). When confronted with a choice of law question, New York courts generally look to the law of the jurisdiction that has "the greatest interest in the litigation," as determined by the "facts or contacts which . . . relate to the particular law in conflict."

---

[5]    For example, allegations in the complaint refer to and rely on representations in the defendants' minimum fee fliers. In their motion to dismiss, defendants produced a version of such a flier but it contains a different set of minimum fees than those alleged in the complaint. Without discovery, plaintiffs would not have the opportunity to contest defendants' evidence and the court cannot resolve such a difference in material fact, which would preclude the granting of summary judgment to defendants even if the court were to convert the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). *See* Fed. R. Civ. P. 56 (providing for the granting of summary judgment only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law").

[6]    Among the differences between the New York and New Jersey statutes are the award of treble damages and attorney's fees, which are discretionary under the former and mandatory under the latter, and costs, which is available in New Jersey but not in New York. *Compare* N.Y. Gen. Bus. Law § 349(h)(McKinney 2008) *with* N.J. Stat. Ann. § 56:8-19 (West 2008).

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969) (internal citations omitted); *see also White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000).  When courts apply this so-called interest analysis to laws that regulate conduct, such as the consumer protections laws at issue here, the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered.  *See Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996); *Sack v. Low*, 478 F.2d 360, 365 (2d Cir. 1973).  This rule holds even where the defendants' conduct and the plaintiffs' injury occur in different states. *Bergeron v. Philip Morris, Inc.*, 100 F. Supp. 2d 164, 170 (E.D.N.Y. 2000)(noting that the law of the state in which the injury is suffered, rather than the state where the fraudulent conduct was initiated, usually governs).  When the conduct in question has a national scope, however, courts may depart from this rule and apply the law of the jurisdiction with the greatest interest in the litigation.  *See id* at 171 (denying motion to dismiss NYGBL claim even though the factual allegations in the complaint showed Massachusetts as having greater interest in applying its consumer protection law; the district court permitted plaintiffs to conduct discovery on the issue).

    In this case, both named plaintiffs are New York residents and they are alleged to have been overcharged by a Jackson Hewitt franchise in Brooklyn, New York.  It is clear that their injuries occurred in New York, which holds prime interest in regulating the conduct toward its residents of tax preparers doing business in the state.  Plaintiffs argue that New Jersey should also be interested in regulating the conduct of the Company, which is headquartered in its state, as well as that of the Franchisee Defendants, who operate a network of franchises there.  These considerations are not enough to outweigh New York's much more direct interest in applying its consumer protection law in this case.  Plaintiffs also argue that they are representing similarly-situated customers of across the country, but the factual allegations in the complaint arise almost

exclusively from events in New York.  Based on these circumstances, the court finds that the choice of law principles warrant dismissal of the NJCFA claim.  The dismissal of the NJCFA claim, however, is without prejudice for plaintiffs to renew for good cause should they uncover substantial facts from discovery that can tip the interest balance in favor of New Jersey's consumer protection law.

> C.    New York General Business Law § 349

New York General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or furnishing of any service" in New York.  N.Y. Gen. Bus. Law § 349(a) (McKinney 2008). The statute gives a private right of action for any person who has been "injured by reason of any violation of [§ 349]"  N.Y. Gen. Bus. Law § 349(h) (McKinney 2008).  To state a prima facie case under § 349, Plaintiff must show: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006)(citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)).

Defendants do not dispute that the allegedly deceptive promotion and pricing practices cited in the complaint are consumer-oriented; they clearly are.  Section 349 is "meant to empower consumers," especially "the disadvantaged" and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." *Vitolo*, 426 F. Supp. 2d at 33.  *See also Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343-44 (1999) (describing the statute as a policy response to the "ever-changing types of false and deceptive businesses practices which plague consumers in [New York]") (citation omitted). Plaintiffs here are customers who allege that they were deceived and overcharged by the second largest tax

preparation service in the country and its franchisees who operate more than a dozen franchises in the New York area. The case fits squarely within the consumer protection scope of the statute.

In support of their motions to dismiss, defendants argue that their business practice was not deceptive or misleading. For purposes of Section 349 pleadings, a deceptive act or practice is defined objectively as an act or practice, including acts or omissions, that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005)(citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). A plaintiff need not demonstrate that the defendant acted intentionally or with scienter. *Id*. The rule imposes an objective standard by taking into account what a reasonable consumer would do under the plaintiff's particular circumstances. There can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed.

Defendants in this case focus on the disclaimer language in the minimum fee fliers, which the complaint referenced but did not quote. In the version of the flier provided by the defendants, the disclaimer states in whole: "FEES VARY ACCORDING TO THE COMPLEXITY OF YOUR TAX RETURN AND THE NUMBER OF SCHEDULES AND TAX FORMS REQUIRED." This blanket disclaimer, they contend, fully discloses to customers the prospect that additional charges would raise the Tax Preparation Fee above the posted minimum, and "extinguishes any claim of consumer deception." (Company Defts' Memo. of Law (ECF Dkt. No. 27), 11).

This attempt to seek cover from the disclaimer fails in several ways. First, the posted minimum fees may be false price floors, that is, the minimum fees are not possible for customers to attain because the disclaimer does not account for the automatic 15% multiplier fee. Plaintiffs

allege that the 15% multiplier fee was applied to all customers, and defendants admit that such a multiplier fee was added during the peak season. The disclaimer states that the minimum fee could vary by the complexity of the customer's tax return, but not by the season. Thus, during peak seasons the Tax Preparation Fee, after the 15% multiplier is added, will always be higher than the posted minimum fees. When the limited facts in the record are construed this way, it is certainly plausible that a reasonable customer may be deceived and misled by the minimum fees during peak seasons.

In an affidavit supporting the motion to dismiss, counsel for the Franchisee Defendants represents that the multiplier fee was already factored into the posted minimum fee figures. (Ennis Decl. ¶ 15). She does not provide the basis of her knowledge to this information or any other documentary proof. In their reply brief, the Franchisee Defendants explicitly disclaim any representation "that the 15% Multiplier was added to the posted 'Minimum fees.'" (Franchisee Defendants' Reply Memorandum of Law (ECF Dkt. No. 39), at 6 n.7).

Defendants argue that plaintiffs did not themselves factor in the 15% multiplier fee in their own itemized accounting of their Tax Preparation Fee. This inconsistency in the plaintiffs' pleadings is not fatal to their deception claim. As an initial matter, the existence of the hidden multiplier fee is independently established in the complaint's reference to the computer screen summaries. Furthermore, in assessing the adequacy of Section 349 pleadings, courts may take into account the parties' relative bargaining positions and access to information. *See e.g., Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 290 (1st Dep't 2003)(the fact that plaintiffs were "a uniquely vulnerable group of consumers" who were subjected to "high-pressure advertising" helped sustain a prima facie showing that small-type "hidden" fees were materially misleading); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343-44 (1999)(noting that consumers

vary in their level of sophistication and finding that a reasonable consumer in the plaintiffs' circumstances could be materially misled by complex calculations in the defendants' insurance policy). When a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice. *See Oswego*, 85 N.Y.2d at 27.

Here, the defendants' non-itemized general bill made it extremely difficult for customers including plaintiffs, who are not well-acquainted with the preparation of tax returns, to determine how and whether they were overcharged. The Franchisee Defendants also fault the plaintiffs for failing to account for still other individual charges that contributed to their Tax Preparation Fees. Information about these other charges is in the exclusive possession of defendants, who have not provided their own itemized breakdowns of plaintiffs' bills. Under these circumstances at this stage of the proceedings, the court will not hold against the plaintiffs certain incomplete or inaccurate portions of their complaint and will permit them to proceed to discovery to uncover more facts.

Second, in addition to concealing the seasonal multiplier fee, the disclaimer language may also fail to give adequate disclosure to what plaintiffs allege were hidden fees for financial products that were also inserted to the non-itemized Tax Preparation Fee. These financial products are services that facilitate and expedite a customer's access to the tax refund, and do not appear to contribute to the complexity of preparing the tax return. Therefore, the insertions of hidden fees for ACRs and RALs to the Tax Preparation Fee, which the plaintiffs do cite in their own account of their fee breakdown, also appear to be outside the scope of the disclaimer on the minimum fee poster.

In addition to considering the specific act or practice alleged to be deceptive, courts also look to see if defendants' general business practices reinforce the alleged misleading effect. In *Gaidon*, the fact that defendants had "trained sales agents to make presentations in ways that would arguably deceive and mislead potential policyholders" helped sustain a claim that specific insurance policies were materially misleading. 94 N.Y.2d at 346. Another New York court determined that the failure to list a surcharge, where the defendant also failed to inform customer representatives about it, met the prima facie requirements of a § 349 claim. *Relativity Travel, Ltd. v. Morgan Chase Bank*, 2006 WL 2918081, at *4 (Sup. Ct. N.Y. County, Feb. 14, 2006) (holding that "[t]he issue is not simply whether the [specific act] was deceptive, but whether [the defendant's] overall business practices in connection with the [act] were deceptive.")

The defendants' attempt to find protection in the disclaimer language is severely weakened by other facts alleged about their general business practice. Even if the disclaimer is deemed to give effective notice of possible fee variations, it appears very difficult for customers to determine how much their tax preparation fee could vary from the posted minimums. The defendants are alleged to have trained their employees to avoid giving itemized fee disclosures and to have imposed a W-2 Form "hostage fee" policy that made it costly and onerous for potential customers to obtain price quotes. Finally, even after customers purchased the defendants' services, the non-itemized general bill still prevented them from determining exactly how their Tax Preparation Fee rose above the minimum price. All of these facts undermine the ability of reasonable customers to determine the true meaning of the minimum posted fees, make meaningful price comparisons with defendants' competitors and make informed buying decisions.

Defendants' suggestion that the word "minimum" in the minimum fee fliers cannot support § 349 claim also is unpersuasive. They rely on *Scott v. Bell Atlantic Co.*, a case that

16

found no deception even though the Internet access service at issue did not always deliver at the advertised "maximum" access speed. 282 A.D.2d 180, 184 (1st Dep't 2001). The court explained that the advertisement merely set forth a maximum possible speed, not the standard speed at which the service would operate and, therefore, a reasonable consumer could not reasonably believe that the product would always run at the maximum speed. *Id*. In this case, the defendants are alleged to have misled customers by posting minimum fees that were not just unlikely, but impossible to attain during the peak season. *See Random House Webster's College Dictionary* 835 (1997) (defining the word "minimum" as "the least amount possible, allowable."). Here, the plaintiffs' interpretation of the word "minimum" in minimum fees matches what a reasonable consumer would have understood the word to mean. This fact distinguishes this case from those in which claims of deception were dismissed because of plaintiff's unreasonable interpretation of a term in the context of the business transaction. *See, e.g., Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 568 (2005)(finding plaintiff's belief that the term "annual" meant 365 days of insurance coverage in the first year was unreasonable in light of contractual language explicitly setting forth the duration of coverage in the initial year); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 252 (S.D.N.Y. 2004) (finding inadequate evidence to suggest that the terms "Swiss Made" and "Geneve" on non-Swiss made watches were misleading because no law in the United States restricted those designations only to watches made in Switzerland and because the terms could also refer to watches having Swiss Movement).

Finally, the defendants question whether plaintiffs can claim that they have suffered actual injury from the alleged deceptive practices. They can. By demonstrating that the

defendants were adding hidden charges to the Tax Preparation Fee, the plaintiffs have made a plausible showing that they were overcharged and therefore injured by the defendants' conduct.

Accordingly, the motion to dismiss the § 349 claim is denied.

### D.    NYC Administrative Code § 20-741.1

The New York City Administrative Code § 20-741 (the "City Code") protects consumers from unfair trade practices in the administration of Refund Anticipation Loans (RALs). RALs are disproportionately used by low-income consumers who need immediate cash from tax refunds and are often unable to evaluate the loans' true cost. The City Code requires full disclosure of RAL fees to ensure that all consumers are aware of the financial burdens they incur by taking on the loans.[7] The regulation aims to "protect consumers and ensure that they are provided with accurate information in order to make informed decisions regarding their tax refunds." Press Release, Office of the Mayor, Mayor Michael R. Bloomberg Signs Legislation Requiring Disclosure For "Refund Anticipation Loans" (Apr. 28, 2003) *available at* http://nyc.gov/cgi-bin/misc/pfprinter.cgi?action=print&sitename=OM. Under the City Code, "before any taxpayer enters into a refund anticipation loan, the tax preparer facilitating such loan shall provide [the following notice] to the taxpayer in writing:

> IF YOU DO TAKE OUT THIS REFUND ANTICIPATION LOAN, YOU WILL BE RESPONSIBLE TO PAY $ (insert amount) IN FEES FOR THE LOAN. AFTER THESE FEES ARE PAID, YOU WILL RECEIVE APPROXIMATELY $ (insert amount) AS YOUR LOAN.

---

[7]    *See* Stephen D. Holt, *Keeping it in Context: Earned Income Tax Credit Compliance and Treatment of the Working Poor*, 6 Conn. Pub. Int. L.J. 183, 200-01, n.133 (2007) (describing that the RAL fees can be equivalent to very high interest amounts, and offer limited financial advantages to consumers); Matt Fellowes, *Making Markets an Asset for the Poor*, 1 Harv. L. & Pol'y Rev. 433, 441-42 (2007) (describing the susceptibility of low-income consumers to RALs and other short-term loans).

NYC Administrative Code § 20-741.1(2).  Defendants contend that they were in compliance with the City Code because they disclosed to their customers, including the plaintiffs, the application and bank fees as well as the finance charge associated with RALs, separate and apart from the Tax Preparation Fee.  However, the complaint alleges that a portion of what the defendants and lender charged for the RAL was not separately disclosed as is required by the City Code, but rather was included within the Tax Preparation Fee.  Plaintiffs contend the failure to disclose the $25 "hidden" RAL fee violates the Code.

If the "hidden" $25 RAL fee is indeed triggered by the customer's purchase of an RAL, this charge should qualify as one of the "fees for the loan" and needs to be disclosed in accordance with the first sentence of the City Code's notice provision.  The Franchisee Defendants attempt to construe the second sentence of the notice requirement to suggest that only the fees that are paid prior to the borrowers' receipt of the loan need to be disclosed.  This interpretation violates the clear intent of the City Code, which is to require full disclosure of the costs associated RALs so consumers can make informed decisions about whether to accept them.  The interpretation also fails as a technical matter in this case because both the disclosed RAL fees and the Tax Preparation Fee, in which the "hidden" RAL fee was allegedly hidden, were paid with the loan principal before any loan proceeds were given to the plaintiffs.[8]

Accordingly, the motions to dismiss the City Code claim are denied.

---

[8]      Watts borrowed $1,397 in her RAL but received an estimated amount of only $1,095 from the loan proceeds.  Deducted from the loan's principal was not only the $152 disclosed RAL fees but also her $130 Tax Preparation Fee.  (*See* Refund Anticipation Loan (RAL) Truth-In-Lending (TILA Disclosure Form), attached as Exh. F to Ennis Decl.)

E.        **Common Law Fraud**

Plaintiffs also allege that the defendants' nondisclosure of their minimum fee multiplier and hidden fees constitutes fraud by omission.  Under New York law, a claim of fraudulent omission or concealment must allege: (1) that the defendant failed to meet its duty to disclose, (2) that the defendant had an intent to defraud or scienter, (3) there was reliance on the part of the plaintiff, and (4) damages.  *Brass*, 987 F. Supp. 2d at 152. Under the Federal Rule of Civil Procedure, "a party must state with particularity the circumstances constituting fraud," though "a person's state of mind may be alleged generally." Fed. R. Civ. P. 9(b).  *See also Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 638 (E.D.N.Y. 2003). To comply with this special pleading requirement, the plaintiff must: (1) detail the fraudulent statement or omission; (2) identify who made it; (3) state where and when it was made; and (4) explain why it was fraudulent.  *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 187 (2d Cir. 1994).  In the case of fraudulent concealment or omission, where the plaintiff is unable to specify the time and place because no act occurred, "the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Manhattan Motorcars*, *Inc. v. Automobili Lamborghini, S.p.A.*, *Inc.*, 244 F.R.D. 204, 213 n.58 (S.D.N.Y. 2007)(citing *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).  These pleading requirements provide defendants notice to prepare a defense, protect their reputations from unfounded claims, and reduce the number of strike suits.  *See Divittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

In the complaint, plaintiffs identified the misleading nature of the defendants' minimum fee fliers whose advertised minimum fees were subject to automatic price hikes not revealed in the disclaimer and that the defendants imposed hidden fees for financial products that did not contribute to the complexity of tax returns. These fliers are alleged to have appeared in the offices of Jackson Hewitt offices at the time the plaintiffs engaged defendants' tax return preparation services. Plaintiffs have pleaded that they would not have purchased defendants' services had they known about the multiplier fee and other hidden fees. Finally, plaintiffs, on behalf of themselves and other similarly-situated customers, contend that they were overcharged to their detriment. The defendants' challenges to the sufficiency of the fraud claim are without merit as described below.

### 1.    Sufficiency of Plaintiffs' Factual Support for the Fraud Claim

Defendants contend that the plaintiffs' fraud claim cannot be sustained because it relies on pleading by information and belief. Generally, allegations of fraud cannot be based on information and belief. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972). Nevertheless, this pleading restriction may be relaxed where the matter alleged is peculiarly within the knowledge of the defendant. *DiVittorio*, 822 F.2d at 1247. When pleading on information and belief is permitted, the allegations must be accompanied by a statement of facts upon which the belief is founded. *Druyan v. Jagger*, 508 F. Supp. 2d 228, 242 (S.D.N.Y. 2007); *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988); *Segal*, 467 F.2d at 608. *See also Wexner v. First Manhattan Co.*, 902 F.2d 169,172 (2d Cir. 1990)(holding that when a defendant peculiarly possesses knowledge, the complaint must still provide circumstantial facts supporting a strong inference of fraud).

In the preamble of the complaint, the plaintiffs state that their allegations are based on a combination of information and belief and the investigation of counsel, who interviewed witnesses and defendants' former employees, and reviewed public and internal records of defendants. Certain key factual assertions in the complaint are accompanied by statements of fact. For example, the allegation that the defendants advertised misleading prices is supported by the presence of minimum fee fliers in defendants' offices. Defendants have also confirmed the existence of such fliers with copies that they submitted in support of their motions. The allegation that defendants applied the 15% seasonal multiplier to the Tax Preparation Fee is supported by the appearance of such charges in defendants' computer records.

Plaintiffs deduced defendants' use of the "hidden" RAL fee from a disparity between the itemized charges contained in the internal accounting of another customers' bill and the amount actually charged on that customer's general bill. The court is willing to permit pleading of this kind in this case because only the defendants know what charges factor into each plaintiff's final Tax Preparation Fee. Moreover, they utilized various means to prevent plaintiffs from gathering facts that could support more particularized allegations of fraud. To prevent plaintiffs from making allegations based on information and belief in this case would reward the defendants for their allegedly deceptive practices.

### 2.    Materiality of the alleged Misrepresentation

The Company Defendants argue that the minimum fee representations were not fraudulent because they were predictions or conditional statements. As a general matter, allegations of unrealized promises of future performance are not actionable as fraud. *See Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 210 (S.D.N.Y. 2001) (citing *Wilmoth v. Sandor*, 259 A.D.2d 252 (1st Dep't 1999)). However, an opinion may constitute fraud where it

has no basis in fact or the speaker was aware of facts undermining the accuracy of the statement. *See In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 141 (S.D.N.Y. 1999). In this case, the posted minimum fees were not predictions that simply did not come to pass. Rather, the fees were, according to the complaint, impossibly low prices that defendants knew would be increased by the inevitable multiplier fee, which they did not reveal either before or after the transaction. Therefore, even if the posting of a minimum fee may have been an opinion in form, the defendants' alleged knowledge of the inaccuracy of this opinion made it fraudulent.

### 3.    Duty to Disclose

Defendants argue that they do not owe customers a duty to disclose more particular information about the Tax Preparation Fee, and insist that the pleading of fraud based on fraudulent omissions must fail. A duty to disclose does not arise "simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them, for under New York Law the ancient rule of caveat emptor is still alive and well." *Brass*, 987 F. Supp. 2d at 152. The duty to disclose arises in three situations: "(1) where a party 'has made a partial or ambiguous statement,' as a party 'cannot give only half of the truth;' (2) where a party has a fiduciary duty to another; or (3) where a party has superior knowledge that is not available to the other party and the party with superior knowledge knows that the other party is acting on the basis of mistaken knowledge." *Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 232 (S.D.N.Y. 2007)(citing *Brass*, 987 F. Supp. 2d at 150 (2d Cir. 1993)). Defendants deny that they, as tax preparers, owe a fiduciary duty to the plaintiffs. However, such a duty can also arise under the first and third situations. Defendants are alleged to have made a partial and ambiguous representation of their minimum fees to customers. They had superior and exclusive knowledge of the actual charges applied to each customer's Tax Preparation Fee, especially

regarding the seasonal multiplier fee. Without knowledge of the seasonal multiplier fee and hidden fees for financial products, customers can be expected to act on the misleading impressions conveyed by the minimum fee fliers. The pleadings are sufficient for the court to conclude that defendants may have owed a duty to disclose more information, and their failure to fulfill this duty may constitute actionable fraudulent omission.

### 4.    Intent Requirement

Defendants also claim that the complaint failed to sufficiently establish their intent to commit fraud. To satisfy the state of mind requirement of common law fraud, plaintiff must raise a strong inference of fraudulent intent either by showing the defendant had the motive and opportunity to commit fraud, or alleging facts constituting circumstantial evidence of reckless or consciously fraudulent behavior. *See In re Time Warner Inc. Sec. Litig.* 9 F.3d 259, 269 (2d Cir. 1993); *Alnwick*, 281 F. Supp. 2d at 641. A plaintiff is not required to produce direct evidence of scienter because "fraudulent intent is rarely susceptible to direct proof and must ordinarily be established by circumstantial evidence and the legitimate inference arising therefrom." *Century Pacific*, *Inc.*, 528 F. Supp. 2d at 222 (internal quotations omitted). A sufficient pleading of motive demonstrates the "concrete benefits" that a defendant could realize by the false statement or omission. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). The pleadings in this case show that the defendants had both the opportunity and motive to commit fraud. As has been amply discussed in the foregoing, defendants' alleged practices of omitting material information from the minimum fee fliers, applying hidden fees, and training employees and instituting policies to discourage the discovery of the hidden fees betray a strong inference of fraudulent intent beyond the normal business motive for financial gain. By luring customers away from

competitors with low advertised prices as well as extracting higher fees and royalties through the hidden charges, defendants stood to derive concrete benefits from the alleged practices.

## 5.    Group Pleading

The Company Defendants argue that plaintiffs improperly grouped together the acts or omissions of two defendants. "Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." *Alnwick*, 281 F. Supp. 2d at 639. This requirement is not satisfied where the acts or omissions of the "defendants are clumped together" through unspecific allegations. *Polar Intern. Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (citing *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999)).

In this case, rather than merely clumping the Company and Franchisee Defendants together, plaintiffs allege that both sets of defendants acted jointly to perpetrate the alleged fraud. The complaint describes a plausible scenario in which the Company Defendants through their website attracted customers with advertisements of low fees and referred these customers to the franchisees' offices for more information about the fees. At the Franchisee Defendants' offices, the customers were then shown the misleading minimum fee posters and were induced to overpay for the defendants' services. The Company Defendants controlled many key aspects of how franchises are managed and operated including office décor, staff training and marketing efforts. There is reason to believe that they were also aware of the material omissions contained in the posters, especially the nondisclosure of the 15% fee multiplier. Plaintiffs have referred to the presence of the 15% multiplier fee in the defendants' internal itemized bills, which were generated by computers running the Company's standard software package. It is therefore

plausible that the Company knew about the multiplier and its nondisclosure to customers in marketing efforts.

Finally, in responding to the complaint, both sets of defendants produced identical copies of the minimum fee fliers.[9]   This suggests that the complaint gave the Company Defendants sufficient notice to identify the factual bases of plaintiffs' fraud claim.  The complaint satisfies the notice concerns behind Rule 9(b)'s heightened pleading requirement.  The motions to dismiss the common law fraud claim are denied.

### F.     Unjust Enrichment

Defendants also move to dismiss the plaintiffs' claim for unjust enrichment. Unjust enrichment is an equitable remedy and requires that a plaintiff show that a defendant benefited at plaintiff's expense, and equity and good conscience require plaintiff to recover.  *ADP Investor Commc'n Serv., Inc. v. In House Attorney Serv., Inc.*, 390 F. Supp. 2d 212, 222 (E.D.N.Y. 2005). A disgruntled customer may only bring a claim if he received "less than what he bargained for." *In re Canon Cameras*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006).   Defendants contend that the plaintiffs are not complaining about the quality of service they received in the preparation of their tax returns or their ability to gain access to their tax refunds.  This contention misses the point of the lawsuit.   Plaintiffs are suing because they are alleged to have paid more for the services and financial products than what they bargained for.

Defendants further contend that plaintiffs are precluded from bringing a quasi-contract claim such as unjust enrichment when the two sides are already in a contractual relationship.  In

---

[9]      As for the origins of the fliers themselves, under the circumstances of this case, it is only reasonable to assume that they were created by either the Franchisee Defendants or the Company Defendants or both. *C.f. Polar Intern. Brokerage Corp.*, 108 F. Supp. 2d at 237. (describing the Group Pleading Doctrine, which permits a fraud claim to rely on the presumption that group-published information is the collective work of those with direct involvement in the management of publicly traded companies).

New York, "a claim alleging unjust enrichment may not be maintained where there is a valid and express agreement between the parties, which explicitly covers the same specific subject matter for which the implied agreement is sought." *MT Property, Inc. v. Weinstein*, 50 A.D.3d 751, 752 (2d Dep't 2008)(citing *Kohn v. Hartstein & Hartstein*, 294 A.D.2d 543, 543 (2d Dep't 2002)). A full and clear oral agreement will also bar a claim for unjust enrichment in the absence of overreaching. *Dimaro v. Coppola*, 10 F. Supp. 2d 213, 226 (E.D.N.Y. 1998).

Defendants attempt to use RAL disclosure forms that plaintiffs signed as evidence of a contract that could preclude an unjust enrichment claim. The thrust of this complaint is not directed at the printed RAL disclosures, which plaintiffs acknowledged and signed, but at the hidden charges for the tax return preparation service. Even assuming the existence of some kind of contract, oral or written, setting forth the terms of the tax return preparation service, the court is unwilling to rule out an unjust enrichment claim at this stage of the proceedings because of defendants' consistent efforts at obscuring what the terms of that contract may be, especially the schedule of fees pertaining thereto and the charges plaintiffs incurred thereunder. The nondisclosures make it difficult to discern what was bargained for. When a contract's meaning is unclear or ambiguous, an alternative theory of unjust enrichment is permitted. *ADP Investor Commc'n Serv.*, 390 F. Supp. 2d at 222-23. Hence, the court denies the motions to dismiss the unjust enrichment claim.

**III.    Conclusion**

For the foregoing reasons, defendants' motions to dismiss are GRANTED as to plaintiffs'

NJCFA claim and DENIED as to all remaining claims.  The parties shall proceed forth with

discovery as directed by Chief Magistrate Judge Steven M. Gold.


SO ORDERED.

Dated: Brooklyn, New York
           August 16, 2008

                                          _____
                                                               /s/
                                                    DORA L. IRIZARRY
                                                United States District Judge