UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD VACCARIELLO on behalf of    :
himself and all others similarly situated,    :

               :      08 CIV 5336 (CS)

            Plaintiff,    :

               :

    - against -    :

               :

XM SATELLITE RADIO INC.,    :

               :

           Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Kenneth A. Plevan
Jeffrey A. Mishkin
Anthony J. Dreyer
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000

Attorneys for Defendant
XM Satellite Radio Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

    The Terms of the XM "Service Contract" Cannot Be Ignored...........................................1

    GOL 5-903 Is Not Applicable Here..........................................................................2

    There Is No Valid Claim for Consumer Deception ............................................................3

ARGUMENT ...............................................................................................................4

I.    PLAINTIFF CANNOT AVOID CONSIDERATION OF THE TERMS OF HIS
    "SERVICE CONTRACT" WITH XM...................................................................4

    A.    The Customer Agreement Is Well Within the Scope of Documentary
        Evidence Considered on a Motion to Dismiss.........................................................4

    B.    The Customer Agreement Need Not Be Signed To Be Valid and
        Enforceable ....................................................................................................6

    C.    Plaintiff's Authentication Argument Is Now Moot ..................................................8

II.    PLAINTIFF CANNOT SHOW THAT GOL 5-903 APPLIES TO XM
    SATELLITE RADIO SUBSCRIPTIONS .........................................................10

    A.    Plaintiff Has Failed To Overcome the Plain Meaning of the Statutory
        Language.......................................................................................................10

    B.    XM's Service Contract Was Terminable Upon Notice and Therefore
        Exempt Under GOL 5-903(3)...............................................................................12

III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DECEPTIVE ACTS
    AND PRACTICES UNDER NEW YORK LAW ............................................13

IV.    THAT PLAINTIFF HAS AFFIRMATIVELY ALLEGED THAT HE, AND
    MEMBERS OF THE PURPORTED CLASS, ENTERED INTO A "SERVICE
    AGREEMENT" WITH XM BARS HIS CLAIM FOR UNJUST ENRICHMENT.........15

CONCLUSION............................................................................................................16

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

Arizona Cartridge Remanufacturers Association, Inc. v. Lexmark International, Inc., 421
    F.3d 981 (9th Cir. 2005) ........................................................................................6

Associated Press v. Riddle, 496 F. Supp. 119 (E.D. Ark. 1980) ..................................11

Ballas v. Virgin Media, Inc., No. 600014-2007, 2007 WL 4532509 (N.Y. Sup. Ct.
    Nassau County Dec. 6, 2007) ............................................................................8

Brower v. Gateway 2000, Inc., 246 A.D.2d 246 (1st Dep't 1998)...........................6, 7, 8

Carter v. Kiernan, No. 98 Civ. 2664 (JGK), 1999 U.S. Dist. LEXIS 178 (S.D.N.Y. Jan.
    11, 1999) ................................................................................................10

Concourse Nursing Home v. Axion Funding Group, Inc., 279 A.D.2d 271 (1st Dep't
    2001) .....................................................................................................15

Cyberlease, LLC v. JP Morgan Chase Bank, No. 04 Civ. 1221 (NRB), 2005 U.S. Dist.
    LEXIS 17639 (S.D.N.Y. Aug. 19, 2005)...............................................................7

Dime Laundry Service, Inc. v. 230 Apartments Corp., 120 Misc. 2d 399 (Sup. Ct. N.Y.
    County 1983) ............................................................................................12

Greenery Rehabilitation Group v. Hammon, 150 F.3d 226 (2d Cir. 1998)....................10

Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997)..........................................7

Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605 (S.D.N.Y. 2006), vacated on other
    grounds, No. 06-3778-cv, 2007 WL 4103680 (2d Cir. Nov. 19, 2007) ............................6

I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., 936 F.2d 759 (2d Cir. 1991) ............5

International Audiotext Network, Inc. v. American Telephone &Telegraph Co., 62 F.3d
    69 (2d Cir. 1995)........................................................................................5

Jarecki v. G.D. Searle & Co., 367 U.S. 303 (1971)......................................................10

Leocal v. Ashcroft, 543 U.S. 1 (2004)........................................................................10

Leon v. Murphy, 988 F.2d 303 (2d Cir. 1993) .............................................................9

Levy ex rel. Immunogen Inc. v. Southbrook International Investments, Ltd., 263 F.3d 10
    (2d Cir. 2001)...........................................................................................4

Lewis v. Casey, 518 U.S. 343 (1996) ........................................................................13

ii

Ludl Electronics Products Ltd. v. Wells Fargo Financial Leasing, 6 A.D.3d 397 (2d Dep't 2004) ........................................................................................................................13, 14, 15

Mina Investment Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355 (S.D.N.Y. 1998), modified on reconsideration, 184 F.R.D. 245 (S.D.N.Y. 1999) .......................................15

Mobile Diagnostic Testing Services, Inc. v. TLC Health Care Network, 19 A.D.3d 1145 (4th Dep't 2005) ........................................................................................................... 11

Mount Vernon Amusement Co. v. Georgian Restaurant Corp., 30 A.D.2d 823 (2d Dep't 1968) ..............................................................................................................................12

NYDIC/Westchester Mobile MRI Associates, L.P. v. Lawrence Hospital, 242 A.D.2d 686 (2d Dep't 1997) .......................................................................................................12

O'Quin v. Verizon Wireless, 256 F. Supp. 2d 512 (M.D. La. 2003) ...........................................7, 8

ProCD v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996) ........................................................................7

Radin v. Albert Einstein College of Medicine of Yeshiva University, No. 04 Civ. 704 (RPP), 2005 U.S. Dist. LEXIS 9772 (S.D.N.Y. May 20, 2005)...........................................6

Register.com, Inc. v. Verio, Inc., 356 F.3d 393 (2d Cir. 2004) .......................................................6

Rinaldi v. Iomega Corp., C.A. No. 98C-09-064 RRC, 1999 Del. Super. LEXIS 563 (Del. Super. Ct. Sept. 3, 1999) ....................................................................................................7

Rossi v. 21st Century Concepts, Inc., 162 Misc. 2d 932 (City Ct. Yonkers 1994) .......................14

S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp., 84 F.3d 629 (2d Cir. 1996).......................5

Sands v. Ticketmaster-New York, Inc., 207 A.D.2d 687 (1st Dep't 1994) ...................................13

Sel-Leb Marketing, Inc. v. Dial Corp., No. 01 Civ. 9520 (SHS), 2002 U.S. Dist. LEXIS 15932 (S.D.N.Y. Aug. 27, 2002) ......................................................................................5

Spagnola v. Chubb Corp., No. 06 Civ. 9960 (HB), 2007 U.S. Dist. LEXIS 21676 (S.D.N.Y. Mar. 27, 2007) .................................................................................................15

Super Glue Corp. v. Avis Rent a Car System, Inc., 159 A.D.2d 68 (2d Dep't 1990)...................13

Telephone Secretarial Service v. Sherman, 28 A.D.2d 1010 (2d Dep't 1967) .............................12

United States v. Kelly, 147 F.3d 172 (2d Cir. 1998) .....................................................................10

United States v. Williams, 128 S. Ct. 1830 (2008)..................................................................10, 12

Watts v. Jackson Hewitt Tax Service Inc., No. 06-cv-6042 DLI (SMG) 2008 WL 3852166 (E.D.N.Y. Aug. 16, 2008)..................................................................................14

Wornow v. Register.com, Inc., 8 A.D.3d 59 (1st Dep't 2004)......................................5, 11, 13, 14

**Statutes**

N.Y. C.P.L.R. 213(2) (McKinney 2003) ..........................................................................................6

N.Y. C.P.L.R. 214(2) (McKinney 2003) ..........................................................................................6

N.Y. Gen. Oblig. Law § 5-903 (McKinney 2001).............................................................2, 10, 12

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1327 (1969).............5

## PRELIMINARY STATEMENT

No issue or argument raised by Plaintiff Richard Vaccariello in opposition to the pending motion to dismiss warrants denial of the motion.

### The Terms of the XM "Service Contract" Cannot Be Ignored

As evident from his opposition brief, Plaintiff now apparently regrets his repeated and numerous references in his Complaint to XM's "contract" with him and its other customers, and would have the Court ignore that contract and its terms in evaluating the legal sufficiency of the Complaint. There are, however, at least 16 such references, including the following:

- XM "automatically renews its service contracts without giving customers notice." (Compl. ¶ 1, emphasis added.)

- "Plaintiff contracted with Defendant XM on April 3, 2005, for satellite radio service for three years in his leased vehicle." (Compl. ¶ 9, emphasis added.)

- "Believing his XM service contract expired on April 3, 2008, Plaintiff did not renew or cancel his service contract." (Compl. ¶ 10, emphasis added.)

- Plaintiff seeks to represent a class of citizens of the State of New York "who contracted with XM for satellite radio services" and "whose contracts were renewed without prior written notice." (Compl. ¶ 21, emphasis added.)

- Plaintiff contends that "questions of fact" common to members of the class include whether "XM breached service contracts with customers." (Compl. ¶ 23(d), emphasis added.)

- Plaintiff's First Cause of Action alleges that XM "failed to provide written notice to its customers of its automatic renewal provision for its service contracts." (Compl. ¶ 29, emphasis added.)

These references overwhelm Plaintiff's position that the XM customer service agreement is not an integral part of Plaintiff's allegations.

Indeed, Plaintiff (correctly) describes XM as a "publicly traded, satellite radio service company" providing access to 170 digital channels across the United States to more than 9 million subscribers. (Compl. ¶ 8.) It is therefore impossible to credit Plaintiff's newly created

assertion that a reasonable subscriber (and, as Plaintiff concedes (Opp. Br. at 10), the standard under N.Y. General Business Law § 349 ("GBL 349") is that of a reasonable consumer) would not understand that XM has a standard "service contract" that sets forth the terms and conditions of a subscription. Certainly Mr. Vaccariello did not deny this in his Affidavit; in carefully crafted language (Vaccariello Aff. ¶ 3), he denies only that he received "that contract" – i.e. the one submitted by XM with its motion papers – not that he was unaware of the existence of a formal service agreement. At all events, as we show below, Mr. Vaccariello's personal recollection of his dealings with XM and the contents of his undisclosed "detailed records" relating to his XM subscription (see Vaccariello Aff. ¶ 1) are entirely irrelevant here. And, although Plaintiff attempts to avoid the Customer Agreement by raising an authentication argument, that contention has been mooted by the submission of a confirmatory declaration and information from an XM senior executive.

**GOL 5-903 Is Not Applicable Here**

Nor has Plaintiff overcome the legal analysis establishing that N.Y. General Obligations Law § 5-903 ("GOL 5-903") is not applicable here. The express statutory language limits GOL 5-903 to contracts for "service, maintenance, or repair to or for any real or personal property." N.Y. Gen. Oblig. Law § 5-903(2) (McKinney 2001). "Real property" is not at issue here, and Plaintiff cannot point to any "personal property" that XM is servicing, maintaining, or repairing as those terms are fairly interpreted in the context of their use here. In acknowledging, as he must, that "XM does not repair radios" (Opp. Br. at 13), Plaintiff in effect concedes that the statute is inapplicable to a satellite radio service. His argument that the statute applies because XM provides "a service" that subscribers use in connection with their own personal property would, if accepted, render GOL 5-903 virtually without limit. As we show below, moreover, Plaintiff's interpretation runs counter to recent Appellate Division case law.

Nor can Plaintiff rely on the argument that GOL 5-903 should be broadly construed because it is remedial in nature. That argument cannot be used to ignore the express language of the statute, and cannot be squared with the many recent Appellate Division decisions that have carefully circumscribed the scope of the application of the statute, particularly in rejecting the argument that it be applied outside the business-to-business context in which the statute was intended to apply.

Finally, GOL 5-903 is inapplicable because Mr. Vaccariello's "service contract" permitted him to cancel his XM subscription immediately upon request. Plaintiff tries to avoid the clear implications of this fact by arguing that the Customer Agreement is somehow misleading in stating that "[t]he term of this Agreement is indefinite and Service will continue until cancelled." (Opp. Br. at 2.) Plaintiff cannot dispute, however, that contract terms that are unambiguous are construed by the Court as a matter of law (Moving Mem. at 9); thus the Court is free to, and should, reject Plaintiff's argument on its face. At all events, the best and determinative evidence that the contract is terminable at will is the undisputed fact that Mr. Vaccariello was able to cancel his XM contract on one day's notice. (See Compl. ¶¶ 12-14.)[1]

### There Is No Valid Claim for Consumer Deception

As noted, stripped of the GOL 5-903 allegations, there is little left in the Complaint. In any event, the Customer Agreement's unambiguous terms constitute sufficient disclosure of the indefinite (until cancelled) duration of the subscription relationship to require dismissal of Plaintiff's GBL 349 claim.

---

[1]    Plaintiff in his brief argues that after "he called XM to complain . . . XM eventually cancelled the service." (Opp. Br. at 1, emphasis added.) A cancellation effective the next day is not "eventually."

**ARGUMENT**

## I.    PLAINTIFF CANNOT AVOID CONSIDERATION OF THE TERMS OF HIS "SERVICE CONTRACT" WITH XM

Plaintiff makes three principal arguments as to why the Court should ignore the terms of his "service contract" with XM:  (i) the contract does not fall within the scope of matters properly considered on a motion to dismiss because he purportedly does not rely upon the terms of the contract in the Complaint (Opp. Br. at 7); (ii) the contract is not binding on him because he did not sign it (id. at 2, 5); and (iii) the contract cited by XM was not adequately authenticated (id. at 2, 5, 6) and he never received it (id. at 2, 5, 15).  As shown below, all of these arguments are without merit.

### A.    The Customer Agreement Is Well Within the Scope of Documentary Evidence Considered on a Motion to Dismiss

Plaintiff's argument that he has not "relied on the terms and effects" of the Customer Agreement (Opp. Br. at 7) is belied by his repeated references in the Complaint to the XM "service agreement."[2]  Nothing Plaintiff can argue in a memorandum of law changes that. Indeed, in Mr. Vaccariello's Affidavit, he was careful not to assert that he never received any XM contract or was unaware of the fact that a widely available radio subscription service providing access to 170 digital channels nationwide to more than 9 million subscribers was governed by a formal contract.  Therefore, the assertion that Mr. Vaccariello "is not aware of a written contract" (Opp. Br. at 20) is merely unsupported lawyers argument.

It is well-settled that a court may consider documents referenced in, or integral to, the complaint where plaintiff's allegations rely upon the documents or their legal effect. See, e.g., Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 13 n.3 (2d Cir.

---

[2]    In an obvious attempt to disavow the numerous "services contract" references in his pleading, Plaintiff now characterizes his XM subscription as a "provider relationship."  (Opp. Br. at 3.)

2001); Int'l Audiotext Network, Inc. v. America Tel. &Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995); I.

Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991). On a

motion to dismiss, a court may consider the terms of a contract, even if plaintiff merely

referenced the contract in his complaint without citing or relying on its terms. See I. Meyer

Pincus, 936 F.2d at 762 (where a plaintiff refers to, but fails to introduce, "'a pertinent document

as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the

pleading'") (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure

§ 1327, at 489 & n.15 (1969)); see also Sel-Leb Mktg., Inc. v. Dial Corp., No. 01 Civ. 9520

(SHS), 2002 U.S. Dist. LEXIS 15932, at *7 (S.D.N.Y. Aug. 27, 2002).

Indeed, in deciding motions to dismiss GBL 349 claims based on alleged non-

disclosures, courts routinely consider documentary evidence in which the challenged practice is

set forth or otherwise disclosed – including evidence of a contract between the parties –

regardless of whether the document was attached to the plaintiff's complaint. See, e.g.,

S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 636-37 (2d Cir. 1996) (affirming

dismissal of GBL 349 claim after court considered loan documents in which defendant disclosed

alleged deceptive loan terms); Wornow v. Register.com, Inc., 8 A.D.3d 59, 60 (1st Dep't 2004)

(examining documentary evidence in determining that alleged deceptive practice was fully

disclosed).

The Complaint herein specifically challenges what is characterized as "the

automatic renewal provision for its service contracts." (Compl. ¶ 29.)  Plaintiff cannot base his

5

lawsuit on an alleged provision in a contract and then ask the Court to ignore the actual provision in assessing the legal sufficiency of his claim.[3]

**B.    The Customer Agreement Need Not
Be Signed To Be Valid and Enforceable**

Plaintiff next argues that the Customer Agreement is not enforceable because he did not sign it. (See Opp. Br. at 7.)  This argument flies in the face of well-established contract principles and the realities of modern commerce.  Under New York law, terms and conditions included in a product's packaging or otherwise made available to a customer are valid and enforceable.  See, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427-29 (2d Cir. 2004) (applying New York law) (noting the validity of "terms and conditions" agreements such as shrinkwrap and "clickwrap" licenses); Brower v. Gateway 2000, Inc., 246 A.D.2d 246, 248-52 (1st Dep't 1998) (finding agreement included with packaging materials for products purchased by mail or telephone to be valid and enforceable).  Courts applying New York law have, moreover, specifically considered and interpreted "shrinkwrap" or "boxwrap" agreements on a motion to dismiss.  See, e.g., Brower, 246 A.D.2d at 248-52 (dismissing complaint based on documents submitted by defendant).

Other jurisdictions follow the same principles.  See, e.g., Arizona Cartridge Remanufacturers Ass'n Inc. v. Lexmark Int'l Inc., 421 F.3d 981, 987-88 (9th Cir. 2005)

---

[3]    Indeed, Plaintiff seeks to represent and recover damages on behalf of a class of XM customers who entered into XM services agreements "during the past six years." (Compl. ¶ 21.)  The six year period presumably is based on the New York statute of limitations for breach-of-contract claims, see N.Y. C.P.L.R. 213(2) (McKinney 2003), whereas damages claims under GBL 349 and related unjust enrichment claims are governed by a three-year statute of limitations.  See N.Y. C.P.L.R. 214(2) (McKinney 2003); Radin v. Albert Einstein College of Medicine of Yeshiva Univ., No. 04 Civ. 704 (RPP), 2005 U.S. Dist. LEXIS 9772, at *55-56 (S.D.N.Y. May 20, 2005) (GBL 349 claims are subject to N.Y. C.P.L.R. 214(2)); see also Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605, 612 (S.D.N.Y. 2006) (three year statute of limitations for unjust enrichment claim for damages), vacated on other grounds, No. 06-3778-cv, 2007 WL 4103680 (2d Cir. Nov. 19, 2007).

(packaging terms limiting use of printer cartridges enforceable under California law); Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148-50 (7th Cir. 1997) (agreement contained within computer box enforceable under Illinois and South Dakota law); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1450, 1452-53 (7th Cir. 1996) (terms contained inside box of software enforceable under Wisconsin law); O'Quin v. Verizon Wireless, 256 F. Supp. 2d 512, 515-17 (M.D. La. 2003) (agreement included in box with product enforceable under Louisiana law); Rinaldi v. Iomega Corp., C.A. No. 98C-09-064 RRC, 1999 Del. Super. LEXIS 563, at *7-8, *19 (Del. Super. Ct. Sept. 3, 1999) (disclaimer included in packaging of zip drives enforceable under Delaware law). These universally accepted contract principles benefit consumer and vendor alike, because to hold otherwise likely would, as the Seventh Circuit has observed, "drive prices through the ceiling" as companies add the resources necessary to implement signed, written contracts for each customer, "or return transactions to the horse-and-buggy age." ProCD, 86 F.3d at 1451-52.

Moreover, it is a basic maxim of contract law in New York that "a contract may be accepted by conduct or acquiescence." Cyberlease, LLC v. JP Morgan Chase Bank, No. 04 Civ. 1221(NRB), 2005 U.S. Dist. LEXIS 17639, at *10 (S.D.N.Y. Aug. 19, 2005) (citation and internal quotes omitted). For example, in Brower, defendant sold computer systems through mail and telephone. Brower, 246 A.D.2d at 248. Plaintiffs had purchased and received computers, each of which included a terms and conditions agreement inside the accompanying packing materials. Id. The agreement provided, in relevant part, that "'[b]y keeping your Gateway 2000 computer system beyond thirty (30) days after date of delivery, you accept these Terms and Conditions.'" Id. The court concluded that, by retaining the computer systems in excess of the return period, plaintiffs had assented to the agreement and were bound by it. See id.

7

at 248-52; see also O'Quin, 256 F. Supp. 2d at 516-17 (holding that plaintiff was bound by terms
and conditions included in product box because he did not terminate wireless phone service
provided by defendant).

These principles are clearly applicable here, given that the XM Customer
Agreement applicable to Plaintiff states as follows with respect to acceptance:

> THIS AGREEMENT CONTAINS THE TERMS OF YOUR USE OF XM
> SATELLITE RADIO SERVICES.  IF YOU DO NOT ACCEPT THESE TERMS,
> PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR
> SERVICE (OUR CONTACT INFORMATION IS LISTED BELOW).  IF YOU
> DO NOT CANCEL YOUR SERVICE WITHIN 3 DAYS OF INITIATION OF
> YOUR SERVICE AND INSTEAD CONTINUE TO RECEIVE YOUR
> SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND
> THAT THEY WILL BE LEGALLY BINDING ON YOU.

(Dreyer Decl. Ex. A, at 1 (emphasis added); see also Zarella Decl. Ex. 1, at 1; Ex. 2, at 1, Ex. 4,
at 1.)  Mr. Vaccariello, of course, admits to having used the XM subscription service for at least
three years (Compl. ¶ 10), and XM records show that he had been a subscriber for at least 12
months before he prepaid for three years of service.  (Zarella Decl. ¶¶ 4-6.)

Nor can Plaintiff avoid the terms and conditions of the Customer Agreement by
claiming that he never read them.  In New York, a party "cannot avoid the effect of [a] document
by asserting [that] he or she did not read or understand the contents of the document." Ballas v.
Virgin Media, Inc., No. 600014-2007, 2007 WL 4532509, at *3 (N.Y. Sup. Ct. Nassau County
Dec. 6, 2007) (appeal pending); see also Brower, 246 A.D.2d at 252 ("That a consumer does not
read the agreement or thereafter claims he or she failed to understand or appreciate some term
therein does not invalidate the contract . . . .").

### C.    Plaintiff's Authentication Argument Is Now Moot

Plaintiff contends that the documentary evidence submitted by XM should not be
considered because, first, it was not properly authenticated and there is no evidence that the

March 21, 2008 Letter was sent as part of XM's regular business practice (Opp. Br. at 2, 5, 6, 16), and second, he did not receive the particular Customer Agreement that XM submitted to the Court (Vaccariello Aff. ¶ 3). As to Plaintiff's first point, although the practice of filing "true and correct" copies of agreements and correspondence through attorney declarations is well-accepted, any perceived deficiency in the authenticity of XM's documents has been cured by the submission of the Zarella Declaration. (See Zarella Decl. ¶ 18.)

As to Plaintiff's second point, as noted, Mr. Vaccariello's sworn affidavit is more illuminating for what it does not say than what it does say. In referring to the Customer Agreement filed by XM, he states: "I did not receive that contract when I signed up for XM Satellite Radio service, nor at any point thereafter." (Vaccariello Aff. ¶ 3 (emphasis added).) Tellingly, Mr. Vaccariello does not deny ever receiving a written Customer Agreement from XM, or knowing that his subscription was governed by a formal "service agreement." In the face of XM's longstanding practice of providing Customer Agreements to its subscribers and disclosing to its subscribers the nature and continuing duration of its contract (Zarella Decl. ¶¶ 8, 10, 11-12), Plaintiff has not raised a factual dispute that avoids dismissal of the Complaint.[4] See Leon v. Murphy, 988 F.2d 303, 309 (2d Cir. 1993) (no issue of fact where defendant denied receiving notification in mail from plaintiff, as an "'office procedure followed in a regular course of business'" established a presumption that plaintiff received documents, and "'mere denial of receipt does not rebut that presumption'") (citation omitted).

---

[4]    XM's routine business practice and procedure required that the Customer Agreement be included in the glove box of cars containing XM-compatible radios. (Zarella Decl. ¶ 8.)

9

## II.    PLAINTIFF CANNOT SHOW THAT GOL 5-903 APPLIES TO XM SATELLITE RADIO SUBSCRIPTIONS

Plaintiff does not seriously contend that his Complaint has any merit if GOL 5-903 is inapplicable. Yet there are two compelling reasons why the statute does not apply here, and Plaintiff's arguments to the contrary are not convincing.

### A.    Plaintiff Has Failed To Overcome the Plain Meaning of the Statutory Language

The law is clear that when interpreting a statute, words should be given "their 'ordinary or natural' meaning." Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) (citation omitted); see also Greenery Rehabilitation Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998) ("In interpreting a statute, we must first look to the language of the statute itself."); United States v. Kelly, 147 F.3d 172, 175 (2d Cir. 1998) ("The appropriate starting point for the interpretation of any statute is its language."); Carter v. Kiernan, No. 98 Civ. 2664 (JGK), 1999 U.S. Dist. LEXIS 178, at *7 (S.D.N.Y. Jan. 11, 1999) ("'Unless otherwise defined, individual statutory words are assumed to carry their ordinary, contemporary, common meaning.'") (citation omitted).

Here, the operable language is, as noted, "a contract for service, maintenance or repair to or for any . . . personal property." GOL 5-903. Under the principle of noscitur a sociis, a contractual term is defined by the context of its neighboring words in a series. See United States v. Williams, 128 S. Ct. 1830, 1839 (2008) ("[T]he commonsense canon of noscitur a sociis . . . counsels that a word is given more precise content by the neighboring words with which it is associated."); Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961) ("[T]he maxim noscitur a sociis, that a word or phrase is known by the company it keeps . . . is often wisely applied where a word is capable of many meanings . . . ."). Accordingly, the term "service" must be read in the context of its use together with "maintenance" and "repair." In such context, "service" quite obviously refers to keeping personal property in working order, as in a "service

10

contract" that a business might enter into with a company to keep all of the business's photocopiers in working condition.

Plaintiff, moreover, has failed to distinguish adequately the Fourth Department's decision in Mobile Diagnostic Testing Services, Inc. v. TLC Health Care Network, 19 A.D.3d 1145 (4th Dep't 2005). (See Opp. Br. at 13-14.) While Plaintiff argues that the decision is distinguishable because the court there pointed out that the "primary purpose" of the contract was to provide personal services (the administering of echocardiograms to patients), there is no doubt that in that case, personal property (complex medical equipment) was both supplied and maintained under the contract, yet GOL 5-903 was held not to govern. See Mobile Diagnostic, 19 A.D.3d at 1146. Thus, the holding in Mobile Diagnostic is clearly applicable here, as the "primary purpose" of an XM subscription is to provide customers with a digital signal via satellite.

The First Department decision in Wornow v. Register.com, Inc., 8 A.D.3d 59 (1st Dep't 2004), is also directly applicable here. The defendant there supplied its customers with domain names, which, like XM's signal, can only be used on personal property (in that case computers). The court nevertheless upheld the dismissal of the GOL 5-903 claims on a motion to dismiss. See id. at 59-60. And taken together, Mobile Diagnostic, Wornow, and other Appellate Division cases previously cited (Moving Br. at 11) demonstrate that the New York courts recognize the importance of circumscribing the application of GOL 5-903 to situations covered by the language of the statute itself, and not extending its reach based on a misguided notion of an expansive "legislative intent."[5]

---

[5]    While Plaintiff cites Associated Press v. Riddle, 496 F. Supp. 119, 119-20 (E.D. Ark. 1980) for the proposition that GOL 5-903 should be broadly construed (Opp. Br. at 11-12), Plaintiff

Finally, many of the cases cited by Plaintiff in which GOL 5-903 was found to be applicable involve contracts under which business equipment was to be provided or maintained. See NYDIC/Westchester Mobile MRI Assocs., L.P. v. Lawrence Hosp., 242 A.D.2d 686, 686-88 (2d Dep't 1997) (agreement to maintain an MRI system and provide a manufacturer's service agreement); Mount Vernon Amusement Co. v. Georgian Rest. Corp., 30 A.D.2d 823, 823-24 (2d Dep't 1968) (agreement for installation, service, maintenance and stocking of cigarette vending machine); Dime Laundry Serv., Inc. v. 230 Apartments Corp., 120 Misc. 2d 399, 399-400, 403 (Sup. Ct. N.Y. County 1983) (agreement to supply and maintain coin-metered laundry equipment).[6]

## B. XM's Service Contract Was Terminable Upon Notice and Therefore Exempt Under GOL 5-903(3)

The Customer Agreement clearly states in numerous places that a subscriber may cancel his/her XM Satellite Radio subscription at any time. (See Customer Agmt. § 1(a) ("If you are dissatisfied with the modified programming, you may terminate your service with notice to XM as outlined in Section 6."); id. § 2 ("You always have the right to cancel the Service at any time if these terms are not acceptable to you."); id. § 6(a) ("The term of this Agreement is indefinite and Service will continue until canceled."); id. § 6(b) ("You may cancel Service by notifying us."); see also Zarella Decl. Ex. 1, at §§ 1(a), 2, 6(a), 6(b); Ex. 2, at §§ 1(a), 2, 6(a), 6(b); Ex.4, at §§ 1(a), 2, 8(a), 8(b).)  Even if these provisions are ignored, as Plaintiff urges, there

---

fails to point out that in that case, the court expressly noted that the legislative intent was to "protect businessmen," 496 F. Supp. at 121 (citation omitted), not consumers.

[6] Telephone Secretarial Service v. Sherman, 28 A.D.2d 1010 (2d Dep't 1967) (Opp. Br. at 11), decided more than 40 years ago, is out of line with more recent Appellate Division decisions construing the scope of GOL 5-903, as well as with principles of statutory construction affirmed by the Supreme Court as recently as earlier this year.  Compare Tel. Secretarial, 28 A.D.2d at 1011, with Williams, 128 S. Ct. at 1839.

is no dispute that Mr. Vaccariello cancelled his contract on one-day's notice. (Compl. ¶¶ 12-15.)
Thus, the "one month or less" exception of GOL 5-903(3) applies here, notwithstanding
Plaintiff's effort to confuse the real issue by his reference to long-term payment plans. (Opp. Br.
at 15.) Certainly Plaintiff cannot contend that XM tried to enforce any automatic renewal
provision exceeding one month against Mr. Vaccariello over his objection.

III.    **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR
        DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW**

New York law is clear that a GBL 349 claim cannot survive a motion to dismiss
where the allegedly deceptive act or omission was disclosed. See, e.g., Ludl Elecs. Prods., Ltd. v.
Wells Fargo Fin. Leasing, Inc., 6 A.D.3d 397, 397-98 (2d Dep't 2004); Wornow, 8 A.D.3d at 59-
60; Super Glue Corp. v. Avis Rent a Car Sys., Inc., 159 A.D.2d 68, 71 (2d Dep't 1990); Sands v.
Ticketmaster-New York, Inc., 207 A.D.2d 687, 687 (1st Dep't 1994). Plaintiff fails to cite any
case in which a court has held otherwise.

As Plaintiff has stated, "the basis of his Complaint is that his contract was
renewed without warning." (Opp. Br. at 7.) However, the Customer Agreement repeatedly and
unambiguously states the customer's XM subscription will continue until it is cancelled.
(Customer Agmt. §§ 4(c), 6(a); see also Zarella Decl. Ex. 1, at §§ 4(c), 6(a); Ex. 2, at §§ 4(c),
6(a); Ex. 4, at §§ 5(c), 8(a).) In addition, XM's Letter to Plaintiff plainly states, "your
subscription is set to automatically renew on 4/3/2008." (Dreyer Decl. Ex. B.) Plaintiff's
argument that the Customer Agreement and Letter are somehow misleading is unpersuasive
given this plain and unambiguous language.[7]

---

[7]    To the extent that Plaintiff asserts consumer deception or injury based upon any XM
automatic billing practice (Opp. Br. at 15), it is clear from his complaint that Plaintiff himself
was not automatically billed for his XM service (Compl. ¶¶ 12, 15, 18), and he accordingly
has no standing to bring such a claim. The procedural mechanism of a class action does not
confer standing to a plaintiff who otherwise lacks it in his individual capacity. See Lewis v.

Plaintiff's heavy reliance on <u>Watts v. Jackson Hewitt Tax Service Inc.</u>, No. 06-cv-6042 DLI (SMG), 2008 WL 3852166 (E.D.N.Y. Aug. 16, 2008) (Opp. Br. <u>passim</u>), does nothing to relieve Plaintiff of his obligation to show there was a materially deceptive trade practice and that such practice was not fully disclosed.  In addition, while <u>Watts</u> involved the use of an ambiguous "minimum fee" disclosure, <u>see</u> <u>Watts</u>, 2008 WL 3852166, at *6-9, there is nothing ambiguous about XM's disclosure that its Customer Agreement is of indefinite duration and continues until cancelled by the customer.  (<u>See</u> Customer Agreement §§ 4(c), 5(a), 6(a); Zarella Decl. Ex. 1, at §§ 4(c), 5(a), 6(a); Ex. 2, at §§ 4(c), 5(a), 6(a); Ex. 4, at §§ 5(c), 7(a), 8(a).)  <u>Rossi v. 21st Century Concepts, Inc.</u>, 162 Misc. 2d 932 (City Ct. Yonkers 1994) (Opp. Br. at 13 n.4), is also inapposite, as there is nothing in the decision even suggesting that the defendant disclosed the full terms of the refund policy at issue.

Moreover, Plaintiff fails to distinguish adequately the facts at hand from those in <u>Ludl Electronics</u>[8] and <u>Wornow</u>, in which courts affirmed the dismissal of GBL 349 claims based on alleged failures to disclose purported automatic renewal provisions because the challenged practices were fully disclosed, respectively, in the parties' lease agreement and in emails defendant attempted to send to plaintiff.  See <u>Ludl Elecs.</u>, 6 A.D.3d at 397-98; <u>Wornow</u>, 8 A.D.3d at 60.  Indeed, the First Department in <u>Wornow</u> affirmed the dismissal of plaintiff's GBL 349 claim even though the renewal notice was sent to the wrong (email) addresses.  See <u>Wornow</u>,

---

<u>Casey</u>, 518 U.S. 343, 357 (1996) ("'That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."'") (citations omitted).

[8]    Plaintiff's contention that the plaintiff in <u>Ludl Electronics</u> did not base his GBL 349 deceptive trade practice claim on defendant's alleged failure to comply with GOL 5-901 (Opp. Br. at 16-17) is puzzling, as both claims were based on the same conduct – namely defendant's alleged failure to provide notice of the lease renewal as required by GOL 5-901.

8 A.D.3d at 60. Here, XM mailed notice to the very address where Plaintiff concedes he recently received two bills from XM. (Compl. ¶¶ 12, 15.)

In sum, it is abundantly clear that XM's continuation of Plaintiff's XM Radio was not misleading or deceptive and was fully disclosed, thus there was no "deception."

## IV.  THAT PLAINTIFF HAS AFFIRMATIVELY ALLEGED THAT HE, AND MEMBERS OF THE PURPORTED CLASS, ENTERED INTO A "SERVICE AGREEMENT" WITH XM BARS HIS CLAIM FOR UNJUST ENRICHMENT

Plaintiff cannot seriously dispute that New York courts routinely dismiss claims seeking recovery under a theory of unjust enrichment when the parties have entered into a valid agreement. See Spagnola v. Chubb Corp., No. 06 Civ. 9960 (HB), 2007 U.S. Dist. LEXIS 21676, at *17-19 (S.D.N.Y. Mar. 27, 2007); Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 361-62 (S.D.N.Y. 1998), modified on reconsideration, 184 F.R.D. 245 (S.D.N.Y. 1999). Given Plaintiff's numerous affirmative allegations about XM's "contract" with its subscribers, Plaintiff's unjust enrichment claim fails as a matter of law.

In addition, there is nothing "unjust" about an XM subscriber paying for services that were available prior to the date of notice of termination of the subscription. See Concourse Nursing Home v. Axiom Funding Group, Inc., 279 A.D.2d 271, 271 (1st Dep't 2001); Ludl Elecs., 6 A.D.3d at 398. If Plaintiff were to prevail in his argument, XM and other service suppliers similarly situated would never be able to offer discounts for pre-paid multi-month or multi-year subscriptions, hardly a desirable result, and one that unquestionably would "drive prices through the ceiling" and " return transactions to the horse-and-buggy age."

## CONCLUSION

For each of the foregoing reasons, XM's motion to dismiss this action should be GRANTED.  Although Plaintiff seeks leave to replead (Opp. Br. at 2 n.1), his request should be denied, as Plaintiff has identified no facts that would make his claims legally sufficient.

If, however, the Court finds that the Zarella Declaration precludes dismissal at this stage, then the Court should direct the parties to conduct discovery on the narrow question of the terms of Plaintiff's contract, after which XM should be permitted to move for summary judgment.  Certainly there is no reason here to permit this lawsuit to move into a protracted and costly class discovery/class certification phase, where a minimal amount of discovery could lead to a dismissal on the merits.  This is particularly true where, as here, Plaintiff has raised issues peculiar to Mr. Vaccariello personally that render class certification unlikely in any event.

Dated: September 2, 2008
      New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:_____
Kenneth A. Plevan
Kenneth.Plevan@skadden.com
Jeffrey A. Mishkin
Jeffrey.Mishkin@skadden.com
Anthony J. Dreyer
Anthony.Dreyer@skadden.com
Four Times Square
New York, NY 10036
(212) 735-3000

Attorneys for Defendant
XM Satellite Radio Inc.

16